SEIDL, Appellant, vs. PAULU and others, Respondents.

*May 5—May 31, 1921.*

*Mortgages: Forgery of release: Degree of proof: Presumption from recording: Negligence in signing release: Innocent purchasers: Estoppel.*

1. The presumption under sec. 4156, Stats., that a recorded release in proper form was duly executed, is not conclusive, but the mortgagee may show that the release is a forgery and void; but proof of such forgery must be clear, convincing, and satisfactory. Where, however, the original document of which the record is a copy is destroyed and thus part of the evidence is lost, the strict rule will be relaxed; and the presumption is likewise weakened where the acknowledging officer acted fraudulently.

2. If plaintiff, seeking cancellation of a mortgage release and foreclosure of the mortgage, signed the satisfaction, which was of record when the land was purchased by the defendants, there was some element of neglect or want of caution on her part, and the instrument was not absolutely void as in the case of forgery; and the rule that, if one of two innocent parties must suffer, the loss must be borne by one whose want of care has enabled the third person to commit the wrong or fraud, applies against plaintiff.

APPEAL from a judgment of the circuit court for Milwaukee county: G. N. RISJORD, Judge. *Affirmed.*

Action to set aside a mortgage release executed in the name of plaintiff and recorded, but which plaintiff claims is a forgery, and for foreclosure of the mortgage. Judgment was entered for defendant dismissing the complaint. Plaintiff appeals.

The appellant is a widow sixty-five years of age.    One Best, a stock and bond broker and her son-in-law, helped her in attending to her affairs and in large part took charge for her of the transactions here involved.    The respondent *Emma Paulu* was the owner of the lots upon part of which the mortgage in question was placed.    Her husband, John Paulu, was a real-estate dealer and seems for the most part to have conducted the negotiations for her.

On February 19, 1912, *Emma Paulu* gave to appellant a mortgage for $2,500 upon the east forty-one feet of certain lots in the city of Milwaukee therein described.    At the same time she executed another mortgage to appellant for a like amount on the west thirty-eight feet of the east forty-one feet of said lots.    Both were promptly recorded. It appeared that the description in the latter mortgage was incorrect, the description intended being the west thirty-eight feet of the east seventy-nine feet.    The former of these mortgages is the one sought to be foreclosed; the indebtedness secured by it has not been paid.

In the spring of 1913 respondents *Wilson* commenced negotiations with respondent *Paulu,* acting through John Paulu, for the purchase of the said east forty-one feet, and engaged a firm of real-estate agents, of whom respondent *Ewens* was one, to look after their interests.    The *Wilsons* refused to assume any existing mortgage as part of the purchase price, and Paulu agreed to have the mortgage released, and also to get a release of the other mortgage appearing of record upon the west thirty-eight feet of the east forty-one feet.    About two weeks thereafter Paulu caused to be recorded two releases, one for each of the mortgages, describing them by volume and page of record, each purporting to have been executed by appellant.    He then exhibited to respondents *Wilson* an abstract showing both mortgages released of record, and the *Wilsons* thereupon bought the premises in good faith, relying upon the record

title, paid full consideration, and executed to respondent *Ewens* a mortgage on the premises to secure a loan made by him to the *Wilsons,* he also acting in good faith.

The trial judge found the foregoing facts substantially as stated. It appeared from the testimony on behalf of appellant that at about the time the releases were recorded by Paulu appellant had executed a release which was intended by her and Best to release the mortgage with the erroneous description, and that in exchange for it Paulu delivered a new mortgage upon the proper description of the west thirty-eight feet of the east seventy-nine feet. This release was drawn up in Paulu's office and was taken by Best to appellant's home for the purpose of her signing it, it being agreed that she might sign it in that way and that her acknowledgment would be certified to by Paulu, who was a notary, upon recognition of her signature, which he had seen when the original mortgages were executed over a year previously but had not seen otherwise. The release was signed by appellant, witnessed out of her presence by Paulu and his stenographer, and the acknowledgment certified by Paulu.

After thus executing one release Paulu placed the two of them, one of which was probably a forgery, on record. In answer to a question of the court whether, through mistake, the release might not have been also of the mortgage in question, Best answered: "No, because I took special attention that it was not the other—only the one—I was very careful at the time so he would not release both; I wanted the one." He did not describe just what precautions he took, and in speaking of the transaction in Paulu's office, at which the release was exchanged for the new mortgage with the correct description, he testified that he did not remember whether descriptions were compared at the time or not.

The trial court further found, upon these issues, that the second mortgage described was released for the reason that

the description of the premises was erroneous; that the appellant signed a release on May 23, 1913, of one of the mortgages, and intended to sign a release only of the second mortgage described and not of the mortgage involved in this action, and if she did sign a release of the mortgage in this action it was done through mistake on her part and through fraud and misrepresentation on the part of Paulu, but that he was unable to say, from the evidence, whether plaintiff actually signed a release of the mortgage here in question or only a release of the other mortgage, and he was unable to say that Paulu forged a release of this mortgage, and that it may be that plaintiff actually signed a release of the mortgage in question supposing it was a release of the other.

Neither Paulu nor the other witness to the release appears to have been called. It appeared that Paulu was in the house of correction, and when asked by appellant for the originals of the recorded releases replied that he believed they were among papers which had been stolen from his office. Respondents introduced no testimony upon the genuineness of the release in question.

After these transactions, which took place in May, 1913, Paulu continued until 1918 to pay the interest to appellant upon the mortgage in question, appellant continued to hold an abstract and insurance policies upon the premises, and when the debt became due in five years from 1912 it was extended for three years by agreement with Paulu acting for his wife. It was not until negotiations for the renewal of the insurance upon the premises in 1918 that respondents *Wilson* and *Ewens* became aware of appellant's claim or that appellant became aware of the supposed release of her mortgage, and when this discovery was made Paulu disappeared.

The trial court concluded that the *Wilsons* had a right to rely on the record showing release; and that, the evidence not clearly and satisfactorily showing that the release of the

mortgage in question was forged, it must be held that the release is effective as against the *Wilsons* and *Ewens* and as to them could not be set aside.

*Otto C. Schumacher* of Milwaukee, for the appellant.

For the respondents *Wilson* there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *H. H. Otjen.*

JONES, J. The plaintiff alleged in her complaint that the release relied on by defendant was a forgery. To establish this claim plaintiff's attorney relied on the facts that the interest on the mortgage was paid for more than five years, evidently for the purpose of concealing the fraud, the assertion of Paulu that the original papers relating to the satisfaction had been stolen, and that when inquiry was made he disappeared. Reliance is also placed on the positive statement of the plaintiff that she never executed the satisfaction in question, and the statement of her agent that he never saw her sign such a paper.

Defendant claims that these facts do not establish forgery because the records show that there was a release of the mortgage on record executed on the same day when admittedly she signed a satisfaction, and that neither the plaintiff nor her agent compared the description in the release which was conceded to have been signed.

Each party makes the claim that the other was guilty of want of ordinary care which contributed to the unfortunate result. Plaintiff's counsel argues that defendants should have made investigation beyond an examination of the record to ascertain whether the release was genuine and should have demanded the production of the canceled note and mortgage. In this connection it is to be borne in mind that defendants did not undertake to pay the mortgage owned by plaintiff or to assume it. It is true they knew of its existence, but they expressly refused to take the title subject to a mortgage. They demanded a clear title. They

were dealing with the land and not as the payers of a debt and therefore did not come within the rule that a debtor, where the debt is evidenced by a negotiable note and recorded mortgage, has no right to rely on the records in paying the debt to another than the real creditor, his authorized agent, or one in actual possession of the note. *City Bank v. Plank,* 141 Wis. 653, 124 N. W. 1000; *Bautz v. Adams,* 131 Wis. 152, 111 N. W. 69.

It is further urged that defendants were put upon notice by the fact that, although they knew there had been an original abstract showing incumbrances, Paulu furnished a new one showing their release. Those who have had considerable experience in dealing with abstracts know that they are almost as easily lost or mislaid as umbrellas. Owners of land will scrupulously cherish old recorded documents often of little or no value and pay little attention to their unrecorded abstracts. We are satisfied that in the production of the second abstract there was nothing which should have aroused suspicion in the minds of defendants or those who acted for them in the transaction.

So far as the testimony shows, the defendants and their agents acted prudently and took all the precautions usually taken in obtaining interests in or title to real estate. This cannot be said of the manner in which the plaintiff and her agent conducted her part of the business. They seemed to place implicit confidence in the unfaithful Paulu, although his interest and that of plaintiff were in conflict. He was intrusted with the business of preparing and acknowledging a release of a mortgage which had been executed by his wife. Plaintiff caused to be delivered to him a document which she had signed which was incomplete as to acknowledgment and witnesses. He and his clerk signed as witnesses and he went through the form of taking the acknowledgment, all in the absence of plaintiff and without any direct communication with her. Although this was a very irregular

mode of transacting the business it may not have contributed to the result complained of. A far more serious weakness in the plaintiff's case is the very unsatisfactory nature of the proof as to the identity of the instrument which she signed. The plaintiff's testimony on this subject is entitled to no weight, since she swears positively that she signed no release whatever, although it is clear from the other evidence that she did sign one on the same day that two were recorded. She evidently paid little attention to the business and left it to be carried on by Paulu and her son-in-law, Mr. Best. Although Best swore that plaintiff never signed the release in question, the weight of his testimony is seriously impaired by his other testimony to the effect that he could not state that there had been any comparison of descriptions.

It is claimed by defendant's counsel that since the defendant without any notice paid full value for the land relying upon a clear record title, he should be protected even if the release was a forgery. To this we do not agree. It would be an intolerable rule that through the instrumentality of the recording acts a person without any fault on his part could be robbed of his estate by forgery. When defendant's agents examined the records they found thereon a formal release duly executed, witnessed, and acknowledged. According to sec. 4156, Stats., this was presumptive evidence of the due execution of the instrument. Under similar statutes the courts have gone very far in upholding the titles of innocent purchasers who have relied upon clear record titles. In *Linde v. Gudden,* 109 Wis. 326, 85 N. W. 323, Mr. Justice DODGE said:

"No rule is more firmly established in this state than that, to justify a finding against the execution, according to its terms, of a formal conveyance, duly acknowledged, the evidence must be perfectly clear, convincing, and satisfactory; that the defense must be established beyond all reasonable

controversy,—indeed, as some authorities put it, beyond a reasonable doubt."

In somewhat varying language the same general rule is declared in most states. 1 Corp. Jur. 893 *et seq.*

"The reasons for these rules are obvious and satisfactory. They are essential to the security of titles. If the solemn deed of a party to real estate, duly attested by a public officer and recorded according to law, may be avoided by the grantor's individual oath or by anything short of clear and convincing evidence, the efficacy of recording statutes is largely destroyed, and the title to such property is precarious indeed. Public policy, as well as individual security, require that the ownership and peaceful possession of land should be subjected to no such hazard." 1 Corp. Jur. 897, quoting *Chivington v. Colorado Springs Co.* 9 Colo. 597, 605, 14 Pac. 212.

But the presumption declared in the statute is not conclusive, and plaintiff had the undoubted right to prove that the instrument in question was a forgery and hence utterly void. *Blount v. Blount,* 158 Ala. 242, 48 South. 581, 21 L. R. A. n. s. 755; *Vesey v. Solberg,* 27 S. Dak. 618, 132 N. W. 254. In this case it was claimed, doubtless in good faith, that the forgery was committed by the husband of the defendant *Paulu* and that he had destroyed the original document of which the record was a copy and thus destroyed in part the evidence of his criminal act. If the original document were produced, it might with the aid of extraneous evidence clearly show the forgery. Under such circumstances it would seem unjust to require the plaintiff to prove by the strict rule above pointed out that the document was forged. In a recent well reasoned case where in some respects the facts were quite similar, the court held that under such circumstances the strict rule should be relaxed, and to this we agree. *Vesey v. Solberg,* 27 S. Dak. 618, 132 N. W. 254. In the present case, moreover, the presumption would seem to be weakened by the fact that the acknowledging officer acted fraudulently.

Seidl v. Paulu, 174 Wis. 403.

Although the trial judge seemed to consider that it was necessary for plaintiff to prove the forgery by clear and satisfactory proof and based his decision on that theory, we have carefully examined the evidence and have come to the conclusion that plaintiff failed to establish the allegations of the complaint even by a preponderance of evidence. It is argued by plaintiff that, since the court found that she never intended to sign the document in question and that fraud was practiced upon her, the mortgage should be reinstated. This raises an entirely different question from that already discussed. If she signed the satisfaction there was some element of neglect or want of caution on her part, and the instrument was not absolutely void as it would be in the case of forgery. In such case she could not have the mortgage reinstated as against an innocent purchaser. She would be to some extent responsible for the recording of the release. She would be barred by the familiar rule that when one of two innocent parties must suffer loss it must be borne by the one whose want of care has enabled the third person to do wrong or perpetrate the fraud which caused the loss. *Wittenbrock v. Parker,* 102 Cal. 93, 36 Pac. 374, 24 L. R. A. 197; *Robbins v. Todman,* 28 Kan. 491; *Heyder v. Excelsior B. L. Asso.* 42 N. J. Eq. 403, 8 Atl. 310; *McConnell v. American Nat. Bank,* 59 Ind. App. 319, 103 N. E. 809.

We agree with the trial court that the allegations of the complaint are not proved and that the action should be dismissed.

*By the Court.*—Judgment affirmed.