HEAL, Respondent, vs. STOLL and another, Appellants.

*October 19, 1921—February 7, 1922.*

*Fraud: Misrepresentations as to value of second mortgage: Complaint: Statement of fact or opinion: Sufficiency of evidence: Belief of purchaser that he is dealing with principal: Liability of principal for fraud of agent: Damages: Value of lands: Evidence.*

1. In an action for deceit in which the damage was a failure of the maker to pay a note secured by a second mortgage sold by defendant to plaintiff, allegations in the complaint of the foreclosure of the first mortgage and the sale of the mortgaged property for an amount sufficient only to meet such mortgage, interest, and costs, with other allegations that the mortgagor was not solvent at the time of the foreclosure and has never since been solvent, were sufficient to show damage to plaintiff without showing that he had taken steps to collect the note.
2. Where the evidence was conflicting as to representations made by defendants' agent, the findings of the jury are binding on this court.
3. Whenever there is any doubt as to whether a statement by a vendor as to value is made as an expression of opinion or as a statement of fact, the question must be determined by the jury or the court.
4. The evidence in this case is *held* sufficient to support findings of the jury that defendants' agent had represented a note as good for its face value and had misrepresented the value of the land securing the note, and that plaintiff had relied on these statements.
5. The belief of plaintiff that he was dealing with the principal instead of the agent up to the time of the assignment of the

note and the mortgage does not change the relation of principal and agent so as to relieve the principal from liability for misrepresentations of the agent.

6. Where one of two innocent persons must suffer from the fraud of another, the one who furnished the means to commit or whose negligence caused the wrong to be committed must bear the loss; and a principal is liable for false representations of his agent causing damage to a party with whom the agent deals in the course of business authorized to be carried on by him, regardless of whether the principal knew of the false representations or intended them to be made.

7. While plaintiff must exercise reasonable care and diligence to avoid loss and minimize damage, it is held that this court cannot set aside an answer of the jury to the effect that the plaintiff did not fail to exercise ordinary care in taking such steps as an ordinarily prudent man would have taken in protecting and securing his second mortgage, as all the circumstances in that regard were doubtless considered by the jury.

8. In fixing the value of lands the jury is not bound to take the average of estimates of witnesses, but should weigh the opinions of all the witnesses, and in making their determination they were not bound to ignore entirely their own knowledge with respect to the elements which combine to constitute value.

ESCHWEILER and ROSENBERRY, JJ., dissent.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

This is an action for deceit on the alleged false representations of the defendants concerning the value of a note secured by a second mortgage.

The complaint alleged that the defendant *Stoll* was the agent of the defendant *Schroeder* and was duly authorized to act on behalf of *Schroeder* in the transaction complained of; that the defendant *Stoll* had a financial interest in the transaction; that on or about March 31, 1913, *Stoll* induced the plaintiff to sell his land in Vernon county, Wisconsin, to *Schroeder* for the sum of $15,400, and to take as part payment a note executed by one Turner, payable to *Schroeder,* in the amount of $7,534, which note was se-

cured by a mortgage on a 1920-acre ranch in Emmons county, North Dakota, and was subsequent to a mortgage of $16,500 on the same property.

The complaint further alleged that *Stoll,* in order to induce plaintiff to make the trade and to accept the note, wilfully, fraudulently, and falsely represented to plaintiff that said note and mortgage were as good as gold; that the Dakota land was worth $20 per acre; that Turner was a thrifty man, solvent, and the owner of a large amount of suitable farming equipment unincumbered by mortgage; that acceptance of said note would be a good deal for plaintiff; and that said lands were a fine ranch and good rich soil; whereas in fact the note and mortgage neither then nor ever has been of any value whatever; the land did not then nor at any time thereafter exceed in value $12 per acre; the mortgagor, Turner, was neither then nor thereafter thrifty, solvent, nor the owner of any considerable amount of unincumbered personal property; and the ranch was of poor soil and not suitable for cultivation to any appreciable extent.

Plaintiff further alleged that he knew nothing of the nature or value of the ranch; that he relied solely on the representations; that *Stoll* knew all of the facts, and that he knew plaintiff was being deceived and defrauded, and that he intended that plaintiff should be so deceived and defrauded. He also alleged that defendant *Schroeder* knew the falsity of the statements and that the plaintiff was being defrauded.

The complaint then set out that on July 10, 1915, the ranch was sold under foreclosure for $19,800, the amount of the first mortgage and interest, which sum plaintiff alleged to have been the full value of the land; that he had often tried but had never been able to sell the note and mortgage; and that plaintiff had suffered damage to the amount of $7,534, with interest at six per cent. from April 18, 1913.

The defendants each filed a separate answer and in addition to these a joint answer in the nature of an equitable counterclaim.

The defendant *Stoll* admitted his agency but denied that he had any further financial interest, and denied the allegations of fraud. He alleged that the land was adequate security for both mortgages and that any loss suffered by the plaintiff was due to his own failure to use ordinary care in protecting his interest. He alleged further that the plaintiff did not rely on his representations, but, on the contrary, sought information elsewhere as to all the material facts set out in the complaint.

The defendant *Schroeder* denied all personal knowledge of the negotiations preliminary to the sale; and denied that he made or knew of any false representations being made during the transaction. He alleged that any loss suffered by the plaintiff was due to his own lack of diligence. The joint answer repeated for the most part the allegations of the other answers.

The evidence showed that the plaintiff, a farmer living near Viroqua, approached the defendant *Stoll*, a storekeeper of the same town, with a view to disposing of his property. *Stoll* offered to buy his land for $15,400 and give in payment cash and the note in question. *Stoll* acted as the agent of *Schroeder* and received a commission of three per cent. Plaintiff, however, thought *Stoll* was the principal until the conclusion of the transaction when *Schroeder* assigned the note and mortgage. The note was indorsed without recourse.

It is not disputed that plaintiff knew of the first mortgage. During the course of the negotiations he went to Mr. Procter of Viroqua, who was president of the bank which held the first mortgage. From the testimony of these two it appears that Procter told him that he did not know the value of the ranch, but that it was at least sufficient to cover the first mortgage.

After the contract was entered into, but before the assignment or deed was made, the plaintiff talked with C. E. Green, a former owner of the ranch, who happened to be in Viroqua at that time. Green testified that he truthfully answered all the questions of the plaintiff. Plaintiff asked only a few questions in this interview, as to the character of the ranch, the amount of stock, and the cultivated area. He gave as his reason for not making a full inquiry:

"I didn't inquire about any of these things because I was relying on *John* [*Stoll*]. I didn't know Mr. Green. That is the only explanation I have to offer."

Concerning the alleged false representations the plaintiff testified that *Stoll* said the note was as good as gold; that Turner, the owner, was well equipped with machinery and stock and had $40,000 invested and would not let the land go for the indebtedness; that he had eighty head of cattle; and that the land was worth $20 per acre. He stated that he had known *Stoll* for about twenty-five years and that he relied entirely on his statements, and that *Stoll* did not tell him to visit the ranch.

As to the note, he testified that he tried to sell it to the First National Bank of Viroqua, to the Vernon County Bank, to Mr. Bennett of Viroqua, and also that he had tried to use it as collateral several times and had been unable to do so, with the exception of once when for a time it was accepted as security for a loan. He further testified that Procter offered to renew the first mortgage and carry it along with the second if the plaintiff would agree to assume the whole debt, no additional security being required. He testified that he was unable to do this and that the first mortgage was foreclosed, the sale bringing only the amount of the first mortgage with accrued interest.

The defendant *Stoll* testified that he had visited the ranch twice; that he had told plaintiff that the land had been twice turned in trade for $20 per acre. As to the alleged statements regarding the condition of Turner, he testified that

he had only said that Turner was equipped to operate the ranch in the manner his contract called for; and that statements of Turner's financial condition related to a time before the deal.    He testified that he made no representations concerning the value of the note, the quality of the soil, or the merits of the deal.    He said further that he had directed the plaintiff to visit Procter and to go inspect the land; and that he had introduced him to Green, a former owner.

Plaintiff never made any complaint to defendants about the misrepresentations except by the service of the complaint.

Turner testified that he bought the ranch in 1913, paid $42,000 for it, and gave the note in question to *Schroeder*. He testified that in March, 1913, he was unable to pay the note.    There was other evidence tending to show his insolvency.

It is undisputed that in the summer of 1915 the land was sold under foreclosure for $19,800 and that in November of the same year the purchaser at the sheriff's sale sold it for $24,000.    The note is in the hands of the plaintiff, is not outlawed, and has never been reduced to judgment.

In a special verdict the jury found that *Stoll* had represented the note to be good as gold, meaning thereby good for its face value, and that the land was worth $20 per acre; that plaintiff had relied on these statements; that the land was actually worth $10 per acre; that the note was worth nothing in 1913; that the plaintiff was not lacking in care to rely on the representations of *Stoll;* and that he had not been guilty of laches in protecting his mortgage.

Judgment was entered for the plaintiff in the sum of $11,165.25.

For the appellants there was a brief by *Smith & Moen* and *J. Henry Bennett*, all of Viroqua, and oral argument by *Mr. Bennett* and *Mr. C. J. Smith*.

For the respondent there was a brief by *P. A. & R. R.*

*Williams* of Marshfield, and oral argument by *R. R. Williams*.

The following opinion was filed November 15, 1921:

JONES, J. Defendants' counsel at the trial demurred to the complaint *ore tenus* on the ground that it did not state facts sufficient to constitute a cause of action.

It is argued that it did not appear that any steps had been taken to collect the note and second mortgage and hence it did not appear that they might not have been collected in full. For this proposition *Foster v. Taggart,* 54 Wis. 391, 11 N. W. 793, is relied on, and it is urged that fraud without damage or damage without fraud does not constitute a cause of action.

In that case the fraud was predicated on the representations as to the value of a note and first mortgage on which there had been no foreclosure, and it was held that the complaint was bad because it failed to show that the securities were insufficient and what would be the probable deficiency upon a sale on foreclosure. In the present case the complaint alleges the foreclosure of the first mortgage and the sale for an amount only sufficient to meet the mortgage, interest, and costs, thus wiping out plaintiff's mortgage lien. These allegations and others that the mortgagor was not solvent at the time of the foreclosure of the mortgage, and has never since been solvent, seem to show beyond question loss or damage to the plaintiff.

In discussing the rule of damages for misrepresentation on the sale of a first mortgage, Mr. Justice NEWMAN said:

"If the securities had already been foreclosed and applied, evidence of that fact would be pertinent and cogent to establish the actual amount of damage." *Beetle v. Anderson,* 98 Wis. 5, 10, 73 N. W. 560.

There was conflict in the testimony as to the representations made by the agent, *Stoll.* On this subject we have

plaintiff's emphatic statements and *Stoll's* emphatic denial. The jury found that *Stoll* represented that the note and mortgage were as good as gold, and in a separate answer that it was understood by the plaintiff and *Stoll* that this statement meant that the note and mortgage were worth their face value. They also found that this statement was made to induce the purchase. The jury further found that, to induce plaintiff to accept the note and mortgage, *Stoll* represented that the Dakota land covered by the mortgage was worth $20 per acre and that plaintiff relied on this representation and the other as to the value of these securities. On this record we are bound to accept the answers that *Stoll* made the representations as alleged.

Whether plaintiff had the right to rely on these representations is perhaps a more serious question.

It has often been declared that mere statements by the seller as to the value of property are to be treated as expressions of opinion and not as representations of value. But there is no such unbending rule. The fiduciary or non-fiduciary relation between the parties, the experience, or want of it, of the buyer, the nearness or remoteness of the subject of sale, the ease or difficulty of its inspection, all are subjects which may properly be considered in this connection; and the decisions of this court hold that the mere fact that the statement takes the form of an expression of opinion is not always conclusive. Whenever there is any doubt as to whether it is made as a mere expression of opinion or as a statement of fact, the question must be determined by the jury or court.

In an opinion by Mr. Justice ROSENBERRY it was said:

"A study of the cases suggests the thought that, in the absence of an express intent to defraud, the determination of whether or not certain representations are statements of fact or of opinion depends upon whether or not the person to whom the representations are made may, under all the facts and circumstances of the case, including such person's capacity or want of capacity, rely upon them. Where the person to whom they are made may rely upon them they are held to

be statements of fact; where the person to whom they are made may not rely upon them, without being guilty of a want of ordinary care and prudence, they are denominated opinions." *Miranovitz v. Gee,* 163 Wis. 246, at p. 255 (157 N. W. 790).

See, also, *Karls v. Drake,* 168 Wis. 372, 170 N. W. 248; *Swoboda v. Rubin,* 169 Wis. 162, 170 N. W. 955; *Becker v. Spalinger,* 174 Wis. 443, 183 N. W. 173.

There are many authorities holding that false statements of the value of land far distant may be relied on by the buyer as matters of fact and not mere expressions of opinion. See cases cited in 35 L. R. A. 430 and 37 L. R. A. 610.

It is earnestly argued by defendants' counsel that plaintiff had before bought and traded several farms; that he was advised by the defendants to go and see the Dakota land before the deal was closed (this, however, was denied by plaintiff); that he had full opportunity to make further inquiries about the value of the ranch; and that the finding of the jury that he had used ordinary care in relying upon the statements and representations should be set aside. All these subjects were proper for the consideration of the jury and were no doubt ably presented by appellants' counsel, and we cannot say as a matter of law that the answer of the jury was without credible evidence to support it.

It is also argued that there is no proof of misrepresentations by the defendant *Schroeder;* that *Stoll* was a mere middleman for whose misstatements, if any were made, *Schroeder* was not responsible. The testimony shows beyond any reasonable doubt that *Stoll* acted as the agent of *Schroeder* during the whole transaction and received three per cent. commission. Plaintiff's testimony is that he supposed *Stoll* to be the principal until the time came for the assignment of the note and mortgage. But this fact in no way changes the real relation of the parties.

It is argued that *Schroeder* personally made no false representations and therefore cannot be held liable. By mak-

ing *Stoll* his agent for the sale of the securities *Schroeder* made it possible for a fraud to be committed, and where one of two innocent persons must suffer from the fraud of another the one who furnishes the means to commit or whose negligence caused the wrong to be committed must bear the loss. *Seidl v. Paulu,* 174 Wis. 403, 183 N. W. 246; *Wittenbrock v. Parker,* 102 Cal. 93, 36 Pac. 374, 24 L. R. A. 197; *Robbins v. Todman,* 28 Kan. 491; *Heyder v. Excelsior B. L. Asso.* 42 N. J. Eq. 403, 59 Am. Rep. 49; *McConnell v. American Nat. Bank,* 59 Ind. App. 319, 103 N. E. 809; 12 Ruling Case Law, "Fraud and Deceit," p. 401, § 149. It is important in this connection that *Schroeder* received the full benefit of the transaction.

It is also argued by defendants' counsel that *Schroeder* had no knowledge that the representations had been made and therefore is not liable.

But in such cases the scienter or wrongful intent is not indispensable. If it were the rule that a principal is immune from loss when his duly authorized agent makes false representations inducing a bargain, there would be little safety in a large proportion of the business transactions of daily life. The seller is bound to know that the representations made by himself or his authorized agent to induce a sale are true. *Beetle v. Anderson,* 98 Wis. 5, 73 N. W. 560; *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790; *Law v. Grant,* 37 Wis. 548; *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923. See many cases cited in 12 Ruling Case Law, "Fraud and Deceit," p. 337, § 94.

Appellants' counsel argue that the plaintiff failed to use proper effort to protect himself from loss. It is true that plaintiff was bound to exercise reasonable care and diligence to avoid loss and to minimize the damage; and that to the extent that his damages were the result of his failure to exercise such care and diligence he cannot recover.

It is claimed that it was his duty to accept the offer of Procter to extend the time of payment of both mortgages

Heal v. Stoll, 176 Wis. 137.

provided plaintiff would assume liability for their payment. To this argument plaintiff's counsel reply that his properties were nearly or quite incumbered for their full value, and that ordinary diligence did not require him to assume a load of debts which he could never hope to pay. To the claim that plaintiff did not use due diligence in trying to sell the security it is replied that for several years he was making efforts to realize something from them but was unable to find a buyer and that the note and mortgage had no market value.

It is argued by defendants' counsel that plaintiff should have brought suit upon his note and thus made the attempt to collect of Turner. But the clear weight of testimony was to the effect that Turner was insolvent.

These were all subjects which were doubtless considered by the jury, and in their special verdict they found that the plaintiff did not fail to exercise ordinary care in taking such steps as an ordinarily careful and prudent man would have taken in protecting and securing the Turner mortgage. We cannot properly say as a matter of law that this answer should be set aside.

The jury found in their special verdict that the land included in the ranch when the trade was made was worth $10 per acre, and that the value of the Turner note at that time was nothing. Counsel for the defendants earnestly attack these findings, claiming that there was no credible evidence to support them and that the verdict was perverse. It is undoubtedly true that the preponderance of the opinion evidence indicated a greater value of the land than that found by the jury. Only one witness, Turner, estimated the land at $10 per acre. The average amount of all the values fixed by plaintiff's and defendants' witnesses was about $17. Green and defendant *Schroeder* valued the land at $20 per acre. Some estimated it at $12 and others at from $15 to $18. There could hardly be a better illustration of the fallibility of human testimony when it is sought to

determine values by opinion evidence. Defendants' counsel rely to some extent on the fact that Turner had agreed to pay in trade $42,000 for the ranch, including personal property, a few months before the representations were made, and that in November, 1915, the ranch was sold for $24,000, there being a commission of $2,500. On the other hand, it is argued by plaintiff's counsel that the ranch was unproductive, that only a small part of it was improved, that the climatic conditions were bad; and that on a public sale it only brought the amount of the first mortgage, interest, and costs.

It is argued by plaintiff's counsel that the same considerations apply to the findings of the jury as to the value of the note and mortgage, and that by reason of these facts and the existence of the large prior incumbrance they had no market value.

It is clear that in fixing the value of the ranch the jury were not bound to take the average of the estimates of witnesses. *Churchill v. Price,* 44 Wis. 540.

Counsel for defendants criticise especially the testimony of Turner, urging that he was a willing witness who had come from North Dakota, and that he was strongly prejudiced and unworthy of credit. He had evidently not found the ranch a bed of roses. He may have believed that he had been victimized and may have been prejudiced. Nevertheless the jury may have believed that he had much better knowledge of the land and its value than any other witness. The jury were not bound to accept the opinions of a majority of the witnesses. There was much conflict in the evidence as to values and there were many physical conditions described to the jury. It was the duty of the jury to consider and weigh the opinions of all the witnesses as expressed in this testimony, and the ultimate weight of that testimony was a question to be determined by the jury. In making their determination they were not bound to ignore entirely their own knowledge and experience with respect

to the elements which combine to constitute the value of the land. *Head v. Hargrave,* 105 U. S. 45; *The Conqueror,* 166 U. S. 110, 17 Sup. Ct. 510; *Maas v. C. & N. W. R. Co.* 156 Wis. 44, 145 N. W. 176.

The trial court saw the witnesses, heard their testimony, and refused to set aside the verdict. We do not feel justified in holding that there was no credible evidence to support the verdict of the jury as to the value of the land and the securities, or as to the other questions submitted to them, and hence the determination of the trial court should not be disturbed.

Exceptions were also taken to the introduction of evidence and the giving and refusing instructions, and to the refusal to submit certain questions. We have carefully considered these exceptions and find no prejudicial error.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*). I think the present judgment goes too far and beyond even the heretofore recognized wide field of relief in such class of cases.

Here a man of mature years; of former business experience; dealing at arm's length with others; no trust or confidential relationship existing; with the fullest opportunity to examine for himself; no fraud or artifice interposed in the slightest degree to prevent his learning the facts, purchases a second mortgage in alleged reliance upon a seller's statement that it is "as good as gold."

From its very nature a second mortgage, as a matter of common knowledge, is not, and cannot be, as "good as gold" so far as being considered an article of immediate and ready sale in the market. Its very nature implies the possibility of future need of the owner thereof being able to take some steps to protect it in case of any possible future default as to it or as to the large and known first mortgage. Such an instrument as purchased here carries on its face lengthy provisions for foreclosure proceedings in case of

possible future defaults, so that express warning as to such possibility stares him in the face when he buys.

It is evident that at the time of the purchase he did not rest as a matter of fact upon what, on the trial, he testifies was his blind confidence in the seller's expression as to value, because he then sought information from Mr. Procter, interested in the first mortgage, and Mr. Green, the former owner of the very real estate, and all of his questions to each of those persons were evidently fairly and honestly answered.

Any statement made to him as to the then owner of the property, Turner not thereafter defaulting, was of course a representation as to the future, into which the buyer can look just as well and as far as the seller.

Representations as to the then present value of this mortgage, in my judgment, were of no more material weight or basis for the recovery permitted herein than those held to be insufficient for such recovery in *Farmers' Co-op. Packing Co. v. Boyd,* 175 Wis. 544, 185 N. W. 234  Furthermore, the overwhelming weight of the testimony was to the effect that at the time of the purchase by him of this second mortgage there was then a present sufficient equity in the property which made the second mortgage good in the reasonable acceptation of such an expression.

I think also that his delay in making any claim or in bringing this action should have been held fatal laches on his part, and that the judgment should have been reversed.

I am authorized to state that Mr. Justice ROSENBERRY concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on February 7, 1922.