Mergener, Respondent, vs. Fuhr and wife, Appellants.

*March 11—April 6, 1926.*

*Mortgages: Recording acts: Presumption of genuineness of instrument: Forgery of mortgage release: Evidence: Sufficiency: Laches: Extension agreement by mortgagee: Increase in interest rate: Agency of loan agent to satisfy mortgage.*

1. Where an original release of a mortgage has been destroyed, the presumption of its genuineness under sec. 327.17, Stats., arising from the recording, can only be overcome by clear, satisfactory, and convincing proof, unless the acknowledging officer has been guilty of a fraud, a crime, or a gross irregularity.   p. 577.

2. The evidence in this case is *held* to show by the requisite degree of proof that a release of a mortgage was a forgery.   p. 580.

3. The plaintiff, who purchased a mortgage and recorded it in the proper office, acquired a mortgage lien on the property superior to every other interest and title excepting only a prior existing first mortgage; and the lien of her mortgage cannot ordinarily be destroyed by a forged release.   p. 581.   .

4. The purchaser of a mortgage which constituted a valid lien on the premises is not precluded from enforcing the mortgage against subsequent incumbrancers or purchasers when procuring an extension of the mortgage and increasing the rate of interest because of a failure to investigate the title, which investigation would have disclosed a forged release of her mortgage by the seller, since the extension agreement merely continued her rights as they existed when she received and recorded her mortgage for an additional period.   p. 583.

5. An increase in the rate of interest by the holder of a second mortgage when procuring an extension thereof is *held* not to affect the rights of subsequent purchasers or incumbrancers without knowledge of such mortgage.   p. 584.

6. The fact that the parties signing a note and mortgage received no part of the loan does not affect their liability in an action to foreclose the mortgage, where the purchaser of the mortgage was induced by their fraud to rely on the strength of their title and personal liability.   p. 584.

7. Authority to execute the release of a mortgage cannot be inferred because the party executing the release was the agent of the holder of the mortgage with authority to negotiate loans for her.   p. 585.

APPEAL from a judgment of the circuit court for Milwaukee county: R. S. COWIE, Judge.    *Affirmed.*

The appeal is by the defendants, *Jack Fuhr* and *Dora Fuhr,* from a judgment of mortgage foreclosure rendered in the circuit court.

The plaintiff, who claims to be the owner of a certain note for the sum of $3,000 executed by one Albert Zipter and Hattie, his wife, the payment of which was secured by a real-estate mortgage executed by said Zipter and wife, who held the record title to the property described in the complaint, commenced an action of foreclosure in the usual form in actions of that kind, and she also prayed for the cancellation of a certain release of said mortgage which appeared upon the records, upon the ground that the same had been forged.

One Otto J. Habhegger, in the year 1915 and for a long time prior thereto, was engaged in the business of a real-estate agent in the city of Milwaukee, and in connection with such business procured and negotiated loans secured by real-estate mortgages. The plaintiff was a divorced woman of the age of about fifty years, who for some fourteen or fifteen years prior to 1915 had been the wife of a real-estate agent in said city, and during such time had casually acquired some knowledge of the real-estate and loan business, but the extent of her knowledge appears not to have been as great as even the ordinary investor of funds in such securities. On or about the 1st day of July of the year above mentioned she was desirous of investing the sum of $3,000, which she had acquired by inheritance, in a real-estate mortgage, and in order to accomplish this purpose she appealed to one Russell, who had an office in the Caswell block in said city, for advice with respect to someone in whom she could place trust and confidence. Habhegger, who likewise had his office in the Caswell block, was recommended to her, and she paid to him said sum and received therefor a note

signed by said Zipter and wife, which was payable in three years after date, with interest at the rate of five per cent. per annum, interest payable semi-annually, and which was secured by a mortgage upon the property described in the complaint. The note was delivered to the plaintiff by Habhegger, and the mortgage was left for recording in the office of the register of deeds by him, and when recorded was delivered to the plaintiff, who deposited both documents in a safety-deposit box in a bank in said city. No demand was made by the plaintiff for an abstract of title. She did not examine the mortgaged premises until two days after the loan was negotiated. She placed implicit confidence in Habhegger. From July, 1915, for a period of about eight years, she collected the semi-annual interest on her securities through Habhegger, and, upon receipt thereof, signed proper acquittances therefor.

While this note and mortgage purported to be a first-mortgage lien upon the premises, a prior subsisting, valid mortgage lien had attached thereto in favor of the First Trust Company of Milwaukee county, executed by Zipter and wife on the 26th day of March, 1915, which mortgage had been duly recorded, and which was, subsequent to the execution thereof, assigned to one August Wegell. Habhegger, when he negotiated the mortgage loan to the plaintiff, knew of this prior mortgage loan, but failed to apprise the plaintiff thereof, giving to and leaving her under the impression that her mortgage constituted a first lien.

In the early part of February, 1920, Habhegger, who at all times herein mentioned and up to the 27th day of February, 1920, was the real owner of said property, notwithstanding the record title thereto was in said Zipter and wife, entered into negotiations for the sale thereof to the defendants *Fuhr* and wife, and in order to accomplish this purpose he procured a conveyance of the property from Zipter and wife on the 7th day of February, 1920, by war-

ranty deed, which deed was recorded on February 16, 1920. On said last named date said Habhegger and wife executed a mortgage on said premises to one Rittel for the sum of $4,000, which mortgage was on the same day recorded, and with the proceeds derived from such loan he paid off the Wegell mortgage, received a release thereof, and recorded the same.

On February 4, 1920, a document purporting to be a release of the plaintiff's mortgage was recorded in the office of the register of deeds, which document, according to the record, appears to have been executed on July 2, 1918, which latter date was the date of maturity of the plaintiff's mortgage. This release is the one which the plaintiff claims was forged and with respect to which she prays for a cancellation.

The title to the property of record now being in Habhegger and wife, free and clear of all incumbrances excepting the mortgage of $4,000 to Rittel, they executed to the defendants *Fuhr* and wife a land contract of the same, the latter taking such property subject to said Rittel mortgage, paying in cash the sum of $1,000 and agreeing to pay the balance of $3,000 and interest in instalments of $225, payable at the end of every three months thereafter, until fully paid.

It also appears that when the plaintiff's mortgage became due on the 2d day of July, 1918, plaintiff requested Habhegger to procure for her an extension, but she was advised that such extension was not necessary. Such request was thereafter repeatedly made, and in 1921, when rates of interest on mortgage securities had greatly advanced, she again insisted not only upon an extension but upon a higher rate of interest. On January 2, 1921, Zipter and wife, who had at that time parted with the record title to said property, executed an extension of the mortgage to January 2, 1924, and in the extension agreement it was also agreed

that the rate of interest be increased to six per cent. from five per cent.

In November, 1922, Habhegger and wife made preparations to execute to the defendants *Fuhr* and wife a warranty deed of said premises, and pursuant to such design, on November 22, 1922, executed to *Fuhr* and wife such warranty deed, free and clear of all incumbrances, excepting only the Rittel mortgage in the sum of $4,000, and on November 23, 1922, and on December 9, 1922, *Fuhr* and wife executed two mortgages upon said premises, respectively in the sums of $5,000 and $500, to one Edward Schroeder, who subsequently assigned the same to one Willibald Richter. Out of the proceeds of the $5,000 mortgage the Rittel mortgage was paid, and it was thereafter duly discharged of record.

On October 16, 1923, Habhegger died. Every instalment of interest becoming due on plaintiff's mortgage was promptly paid by Habhegger at his office up to and including July 2, 1923. A few weeks after the death of Habhegger an examination was made of the records, and the plaintiff then discovered for the first time that a release of her mortgage had been recorded. Thereafter demand was made upon the representative of Habhegger's estate and upon Mrs. Habhegger for a production of the release, but it was admitted that such release could not be found. When the extension agreement was executed it was represented to the plaintiff by Habhegger that Zipter and wife were still the owners of the property. From the time of the original delivery of the note and mortgage to the plaintiff in 1915 up to the time of the trial of the action, plaintiff had her note and mortgage in her possession and under her control, excepting only for the time when the extension agreement was signed by her, when she delivered the same to Habhegger to enter thereon indorsements of interest and a notation of the extension.

The trial court found that the release in question was forged, and thereupon ordered judgment vacating and canceling said release and for a foreclosure of the mortgage; and from such judgment entered pursuant thereto the defendants *Fuhr* and wife have taken this appeal. Further facts will be found in the opinion.

*Maurice A. Goldberg,* attorney, and *Carl B. Rix,* of counsel, both of Milwaukee, for the appellants.

For the respondent there was a brief by *George A. Affeldt* and *Walter A. John,* both of Milwaukee, and oral argument by *Mr. Affeldt.*

DOERFLER, J. Is the release of the plaintiff's mortgage, which purports to have been executed on July 2, 1918, and recorded on February 4, 1920, a genuine document, or is it a forgery? This inquiry lies at the very threshold of this case, and presents a vital question, which, when solved, acts as a master key, opening up and disclosing whatever mystery there may exist in this case.

Upon the trial of the action the release was unavailable. It was not disclosed by a search, and a demand upon the representative of Habhegger's estate and upon his widow did not result in its production. It was evidently destroyed, and the destruction of such an important document, under the circumstances existing herein, in itself constitutes a circumstance which has strong probative force tending to the conclusion that the release was a forgery. Had the release been in existence at the time of the trial its production would have afforded a basis from which it could be readily ascertained whether the signature of the plaintiff appearing upon the document was genuine or spurious. In modern times a system of detection of spurious documents has been developed by handwriting experts which has proven itself so effective as to lead to a correct and satisfactory solution of many a mystery involved in such documents. Such sys-

tem has been of great aid to the courts in the administration of justice, and the Reports contain numerous instances of such cases. The copy of the spurious instrument spread upon the recorder's records, in logic affords but little if any aid in determining the genuineness of the instrument. Under the system, however, that prevails in the various states, the record in the recorder's office is constituted presumptive evidence of the genuineness of the instrument, and in this state, by sec. 327.17 of the Statutes, provision in that behalf has been made by the legislature, so that unless it appears from the evidence in the case that this presumption has been overcome, the record must be deemed controlling whenever and wherever it is offered and received. Such statutory rule has been adopted as a wise provision, tending to establish the security of real-estate titles, and such rule is both practical and wise, for, were it non-existing, the subject of titles would be thrown into a condition of absolute uncertainty and confusion.

To entitle an instrument involving the title or an interest in property to record, the instrument, among other things, must be acknowledged before a proper officer authorized by law to take and certify an acknowledgment. Such acknowledgments are ordinarily taken and certified by a notary public. The rule that a public officer has performed his duty and that he acted honestly and in good faith is universal, and it is this rule that forms the foundation for the presumptive evidence that is created by such statutes as sec. 327.17 of our Statutes. By reason, therefore, of the great importance of the recording acts upon which owners of property have a right to rely for the stability of titles, the presumption created by the statute cannot be lightly overcome. Where, therefore, an original release like the one here in question has been destroyed, the rule prevails that the presumption arising from the record can only be overcome by clear, satisfactory, and convincing proof; and this rule

is only relaxed when it appears that the acknowledging officer has been guilty of a fraud, a crime, or a gross irregularity. *Seidl v. Paulu,* 174 Wis. 403, 183 N. W. 246; *Vesey v. Solberg,* 27 S. Dak. 618, 132 N. W. 254; 1 Corp. Jur. 886.

We have carefully examined the evidence in the case and have considered all the surrounding facts and circumstances, and are convinced that it has been shown by clear, satisfactory, and convincing evidence that the release is not only a spurious instrument but that it was forged by Habhegger.

We have heretofore discussed the circumstance which we deem of great weight, consisting of the destruction of the alleged spurious release. This circumstance, however, is but one of a number, all of which are persuasive that the recorded document is a forgery. Habhegger at all times herein mentioned, until he entered into the land contract with the defendants *Fuhr* and wife, was the real owner of the property described in the complaint. He was such real owner when the trust company mortgage was executed, which was subsequently assigned to Wegell. He was such owner when the plaintiff's mortgage was executed. He was in fact such owner at and prior to the time when Zipter and wife conveyed to him the record title by warranty deed in 1920. Zipter concededly was a mere tool of Habhegger, who permitted his name to be used to promote the latter's fraudulent schemes, and who was a party to the creation of a situation where innocent third parties were led to believe that he was in fact the real owner of the property, whereas in truth Habhegger was such owner. Whether, therefore, Zipter and wife were innocent of any fraudulent intent, their acts, as shown by the undisputed evidence in this case, were such as to place them in a position in a court of equity where they are entitled to little or no consideration. This false showing and holding out to the public of a record title in the Zipters, in which Habhegger actively and intentionally participated,

adds another link of great importance in the fraudulent scheme of Habhegger, which has a tendency to and actually does modify the general rule which ordinarily prevails as above indicated, and which has considerable probative force in proving not only the irregularity which consists of the acknowledgment by Habhegger of a document like the release in question, but also strongly tends to establish the forgery. In 1921, when the extension agreement, which was drafted by Habhegger, was executed, Zipter had parted with his title to the property and Habhegger had executed his land contract to the defendants *Fuhr* and wife. When this extension agreement was delivered to the plaintiff, Habhegger represented to her that the Zipters were still the owners of the property.

But over and above all as a convincing and satisfying circumstance, there exists the bold, outstanding, and convincing fact that at the very time when plaintiff's mortgage was executed Habhegger represented this mortgage as a first-mortgage lien upon the property, whereas, in truth and in fact, another and first-mortgage lien for the sum of $4,000 upon a property worth in the neighborhood of $8,000 had been created by the trust company mortgage. Fraud, deception, and trickery were therefore resorted to by Habhegger at the very inception of the transactions involved herein.

These various circumstances, standing alone, would be convincing to the ordinary person, beyond a reasonable doubt, that the release was a forgery and that Habhegger was the forger. But in arriving at this conclusion we are fortunately not dependent solely upon circumstantial evidence. The plaintiff, whose testimony herein stands unimpeached and who placed implicit confidence in the honesty and integrity of Habhegger, testified positively that she never signed a release of this mortgage; that she knew nothing of a release of record until after Habhegger's death; and that she at no time received a dollar of the principal

amount. No one reading this record can fail to reach the irresistible conclusion that the instrument in question was a forgery; and whether we apply the relaxed rule referred to in *Seidl v. Paulu*, 174 Wis. 403, 183 N. W. 246, or the one pronounced in *Vesey v. Solberg*, 27 S. Dak. 618, 132 N. W. 254, or the ordinary rule applicable to cases of this kind, we are convinced that the findings of the court are amply sustained by the evidence.

There is no evidence to show that either Habhegger or his wife had paid the principal of plaintiff's mortgage. Zipter and wife disclaim such payment. The defendants *Fuhr* and wife take the position that they were unaware of plaintiff's mortgage until after Habhegger's death, and no claim is made that they paid the same. Schroeder and Richter, subsequent incumbrancers, insist that they relied upon the record title, and no claim is made that they paid the plaintiff's mortgage. It would therefore appear conclusively that the mortgage is still outstanding and unpaid and that Habhegger forged the instrument to promote his own interests.

Great reliance is placed upon the case of *Seidl v. Paulu*, *supra*. Two releases were received in evidence in that case, the one admittedly being a forgery and the other genuine. Neither the plaintiff, Mrs. Seidl, nor her business agent, Best, could testify with any degree of certainty whether she signed the release to the mortgage which contained the proper description or the one which contained the improper one. Under such facts this court held that the plaintiff failed to prove by even a preponderance of the evidence that the release of the mortgage containing the proper description was spurious. This case, therefore, is not an authority for the instant case excepting only in so far as it approves of the doctrine and logic of the *Vesey Case*, which establishes a relaxation of the ordinary rule.

The plaintiff's mortgage being a valid and subsisting lien, duly recorded, and securing an existing and *bona fide* in-

debtedness, can therefore be enforced and must be enforced unless it has been outlawed by the statute of limitations, which is not claimed, or unless plaintiff has been guilty of inequitable conduct to the detriment and damage of subsequent owners of the property or holders of incumbrances thereon.

In the second point strenuously urged in the argument and brief of defendants' counsel it is contended that, admitting that the release was a forgery, nevertheless plaintiff has been guilty of such neglect as to bar her from recovery under the evidence and facts and circumstances of this case. It is conceded that she placed implicit confidence in Habhegger, who was recommended to her as an honest and capable real-estate and loan agent. When she made the investment she made no demand for an abstract and she permitted Habhegger to retain the insurance policies. She did not personally examine the records, and she engaged no one to perform such a service for her. Had she taken these precautions she would have been apprised of the existing prior mortgage lien to the extent of $4,000. In other words, in common parlance, she "took a long chance," which under ordinary circumstances might have resulted disastrously to her interests. She became the ready victim of Habhegger's fraud and deception at the very moment she opened up business relations with him. When, however, the $3,000 was paid to Habhegger for the Zipter mortgage (Zipter being a mere tool of Habhegger) and her security was duly recorded in the proper office, her lien upon the property described in the complaint became fixed as a valid second-mortgage lien both as against the Zipters and Habhegger and the rest of the world, which was superior to every other interest or title excepting only the prior subsisting mortgage of the trust company. This lien attached many years before the defendants *Fuhr* and wife and the subsequent incumbrancers had any title to or lien on the property. As has heretofore

been shown, such lien became fixed and permanent as to all the world, and could be defeated solely by the statute of limitations or by plaintiff's neglectful or inequitable conduct.

It is true that the defendants *Fuhr* when they purchased the property exercised every reasonable precaution which a reasonably prudent man would exercise under the same or similar circumstances. They demanded and received an abstract of title and obtained the opinion of an attorney with respect to the same. Both Schroeder and Richter exercised similar precautions, and it must be admitted that if the *Fuhrs* and Schroeder and Richter be adjudged to stand the loss' it burdens them with an unusual hardship. We also fully appreciate the practice universally in vogue of purchasers of real estate and lenders of money to place reliance upon the title of property as it appears of record. The largest loaning companies in the world, such as the Northwestern Mutual Life Insurance Company and Eastern companies, ordinarily take no further precaution than that which was exercised by Schroeder and Richter, and this practice seems to be warranted by experience; for it is only in extremely rare cases, like the one here presented, that losses are sustained. But it is firmly established in every jurisdiction that a lien of a mortgage, properly recorded, cannot ordinarily be destroyed by a forged release; nor can a thief obtain title to personal property; neither can he convey title; and where property is stolen, many innocent purchasers in good faith for value become victims, to their sorrow, and the number so victimized is infinitely greater than those who suffer loss under circumstances like those involved in the instant case. But the mere fact that an innocent purchaser in good faith for value of personal property sustains loss is no reason why the old established rule as to title to stolen property should be modified or abandoned.

Our recording system is the result of years of development and is the product of the best thought and effort of

experts in their line; and, notwithstanding that, it is far from being perfect and is still open to many improvements. The defects and shortcomings of the system have of recent years been disclosed, and, in order to meet a situation like the one here presented, title guaranty companies have been chartered to do business for the express purpose of indemnifying those who have become the victims of criminal operations or of the ignorance or negligence of the recording officers. For a trifling percentage, such a policy of indemnity may be readily procured everywhere, and such guaranties as a title company affords could readily have been procured by those who will be obliged to suffer the loss in the instant case.

The rule applicable to the instant case is well stated in 2 Jones, Mortgages (7th ed.) § 971b, where it is said:

"A forged discharge is not effectual as a discharge even in favor of one who has purchased the mortgaged premises in the honest belief that the discharge as it appeared of record was genuine. That title to property cannot be taken away by theft is a principle well settled. The seller can convey no greater title than he himself possesses. It is equally well settled that an owner of property will not be deprived of his right to the same by the commission of a forgery; and this is true even where the claimant under the forged instrument had no notice of the forgery, and honestly believed that it was honest and genuine."

But it is further asserted by the learned counsel for the defendants *Fuhr,* that, conceding that the plaintiff's mortgage when duly recorded constituted a valid and subsisting lien upon the property described in the complaint, nevertheless she was guilty of negligence in not causing an investigation of the title to be made at a subsequent period, and particularly at the time when, on January 2, 1921, she procured an extension of the mortgage for a period of three years, with a provision increasing the rate of interest from five per cent. to six per cent. Had she not procured such extension, the lien of plaintiff's mortgage would have con-

tinued until barred by the statute of limitations. The extension merely continued her rights as they existed when she received and recorded her mortgage for an additional period. As is said in 2 Jones, Mortgages (7th ed.) § 942, "The extension of the time of payment of a mortgage in no way impairs the security as against subsequent incumbrancers, even if this be effected by a renewal of the mortgage note." See, also, the following authorities cited in the brief of the learned counsel for the plaintiff: 2 Jones, Mortgages (7th ed.) §§ 924, 925; *Burchard v. Frazer*, 23 Mich. 224; *Bassett v. McDonel*, 13 Wis. 444.

Of course, the change in the rate of interest by an increase in such rate cannot affect the right of subsequent purchasers or incumbrancers, and plaintiff's counsel, in recognition of this doctrine, make no claim as to the increased rate of interest. If, therefore, the plaintiff's rights could not have been affected had no extension agreement been entered into, and if an extension in law has the effect laid down in the foregoing authorities, then it is difficult to perceive how the plaintiff can be deprived of her rights by what the defendants' counsel denominate as negligence on her part. Had she been apprised of the forged release before the *Fuhrs* had obtained title to the property a different situation would have been presented, and a court of equity might then have been justified in burdening her with this loss. This would equally be true with Schroeder and Richter under the same or similar circumstances. But she did not discover the forgery until after Habhegger's death and until the defendants *Fuhr* and the subsequent incumbrancers obtained their interest in the property.

On the trial of the action defendants' counsel attempted to prove that the Zipters were mere accommodation makers and signers of the note and mortgage and that they received no part of the loan. Whether they received any part of the loan or not appears to us to be entirely immaterial, and

surely the other defendants who obtained their interests through Habhegger and his successors are in no position to gain an advantage thereby.   Constructively at least, the Zipters were guilty of a gross fraud, for upon the strength of their title and their personal liability the plaintiff relied.

Neither can it be successfully maintained that because Habhegger was the agent of the plaintiff, with authority to negotiate loans for her, it may be inferred that he had authority to execute a release of her mortgage.   The release in question does not purport to have been executed by Habhegger as an agent, and nowhere is there any evidence in the case which either proves, or from which an inference can be drawn, that Habhegger ever had the right to execute this release as an agent.

We therefore conclude that the judgment of the lower court must be sustained.

*By the Court.*—Judgment affirmed.