YAWKEY-CROWLEY · LUMBER COMPANY, Appellant, vs. ACKER and wife, Respondents.

*December 5, 1927—January 10, 1928.*

*Mechanics' liens: Release of waiver: Form: Release fraudulently obtained: Innocent purchaser of property.*

1. Where the owner of property presented to a materialman a release of lien, falsely purporting it to represent his homestead, upon which the materialman had a small lien claim, but which in fact released a substantial claim on another property, the loss consequent upon such fraud should, as between the lien claimant and an innocent purchaser of the property, fall on the claimant, who, by the exercise of ordinary care in resorting to the public records or its own records, could have ascertained such fraud and thus avoided the loss, rather than the purchaser, who was without fault or negligence. p. 506.
2. In view of the kinship between mechanics' and laborers' liens under the statute, and liens on personal property at common law, the limited duration of a mechanic's lien and the practice of ignoring formalities in making, waiving, or releasing a lien, a release executed by the general manager of a corporate lien claimant was valid and sufficient to effect the purpose declared on its face, although it was not sealed or acknowledged. p. 508.

APPEAL from an order of the circuit court for Dane county: A. G. ZIMMERMAN, Circuit Judge. *Affirmed.*

Action to set aside a release of a mechanic's lien and to foreclose the lien.

The facts, as alleged in the complaint and a written stipulation which were held, upon the sustaining of defendant's demurrer,.to be insufficient to entitle plaintiff to relief, were as follows:

On and prior to June 11, 1926, one Londo was the owner of lots 9 and 14 in block 3 of a plat of property in Madison, said county, and upon which at such time the plaintiff, in the lumber and material business, had a lien of

about $1,300 on said lot 9 for materials, and on lot 14, on which Londo lived, for a much smaller amount.

That Londo desired to sell lot 9 to the defendants *Acker* and wife, and as a condition for such sale was required by them to obtain a release of any mechanics' liens that might be then existing.

That on June 11th Londo, informing the plaintiff as to his purpose to sell, presented to plaintiff a form of release of any and all liens of the plaintiff against the building and property on said lot 9, and it was signed in the name of the plaintiff by C. W. Davis, its manager, in the presence of two witnesses, who also signed, but it was without corporate seal or any form of acknowledgment.

That Londo then falsely and fraudulently represented to the plaintiff that the lot 9 therein mentioned was the lot upon which Londo was then living and upon which the plaintiff had the smaller claim for lien, intending thereby to induce plaintiff to believe, and act in reliance upon such belief, that in signing said release there was being waived only the insignificant claim for lien which it had upon lot 14.

That the plaintiff would not have executed such release except for the reliance placed upon such assurance made by Londo that the release was of the smaller claim for lien.

That such release was shown to the defendants *Acker* and they relied upon the same in purchasing, for a valuable consideration, said lot 9, and without notice by them of any of such fraud by Londo.

Plaintiff appeals from the order sustaining the demurrer.

For the appellant there was a brief by *Bagley, Spohn & Ross,* attorneys, and *Myron Stevens,* of counsel, all of Madison, and oral argument by *Mr. Frank A. Ross* and *Mr. Stevens.*

For the respondents there was a brief by *La Follette, Rogers & Roberts* of Madison, and oral argument by *Philip F. La Follette.*

ESCHWEILER, J.   The substantial question here presented upon the facts is as to which of the two parties, each innocent of the fraud perpetrated by Londo, the owner of the real estate, shall be held to suffer the loss occasioned by such fraud.

The defendants *Acker,* paying a valuable and substantial consideration and in a good-faith purchase from Londo of lot 9, were entitled to rely upon the assurance conveyed upon the face and in the form of the release signed on plaintiff's behalf, and nothing in the nature of any want of ordinary care or failure to exercise reasonable precautions can be charged against them.

Although as between plaintiff and Londo himself the plaintiff might well have relied upon the presumption of Londo's honesty and fair dealing and need have made no searching inquiry as to the real facts concerning such a transaction where, as a matter of accommodation to Londo, it was perfectly willing to release, for the expressed consideration of $1, its inconsequential lien on lot 14; yet when, knowing as it did that whatever release it was then executing was to be used by Londo to be presented to and relied upon by the defendants *Acker* in their transactions with Londo, plaintiff became bound to exercise ordinary care to see to it that that which it did in so signing the release, thereby placing in the hands and power of Londo a declared assurance that lot 9 was free from any claim of lien, should not bring harm to the *Ackers.*

Upon the conceded facts it is apparent that by the exercise of ordinary care in resorting to the public records or its own records, or other available information, plaintiff could have ascertained that it was releasing its substantial lien of $1,300 on lot 9 instead of its lien on the other lot.

As between the plaintiff and the defendants *Acker,* both deceived by the fraud and false dealing of Londo, the law should and the law does place the consequent loss upon the

one who could have avoided such consequences by the exercise of a reasonable amount of care or diligence rather than upon others, who were without fault or negligence.

The facts here are such that it was rightly disposed of by the trial court upon the doctrine announced in *Seidl v. Paulu,* 174 Wis. 403, 411, 183 N. W. 246, that such a loss must fall upon the one whose want of care enabled the perpetrating of the fraud causing the loss. The same rule is recognized in *Heal v. Stoll,* 176 Wis. 137, 146, 185 N. W. 242.

We are not here concerned with the rule that should be applied where a document relied upon has a forged instead of a genuine signature, or where a signature is obtained from someone who is incompetent under the law to execute such document, or with the paramount rights of such as infants or the insane to avoid their apparent contracts, as discussed in *Brewster v. Weston,* 235 Mass. 14, 17, 126 N. E. 271. There is here no such forged instrument as was held ineffectual to destroy the lien of a mortgage in *Mergener v. Fuhr,* 189 Wis. 571, 578, 208 N. W. 267. Neither do we deem it material to determine as between the parties here immediately concerned whether such fraudulent representation by Londo as to the situation of the plaintiff toward the particular lot 9 came within the penal provisions of such statutes as sec. 328.43 (14), concerning the alterations of evidences of title; or sec. 343.56, defining and punishing forgery and counterfeiting.

It is further urged that the release not being in compliance with sec. 240.06, requiring a written deed or conveyance of estates or interests in land other than leases for a term not exceeding one year, and also that inasmuch as this release was not signed by the officers of the corporation as designated in sec. 235.19 (2), and lacked the corporate seal specified in said section and in sec. 235.17, it should not have been relied upon by the defendants *Acker.* This argument

is based upon the assertion that such a release is one affecting real estate and is a document within the definition of "conveyance" in sec. 235.50.

No prior rulings of this court have been made holding that the release by a lien claimant of his claim for such a lien is to be considered within such statutory definition of conveyance (sec. 235.50, *supra*), or that it must be executed with the above suggested formalities as to signature by corporate officers or with the corporate seal.

In *Best v. Gunther,* 125 Wis. 518, 521, 104 N. W. 82, 918, however, it was held that a power of attorney and an instrument revoking such authority are not within such statutory definition of "conveyance," while in *Boyden v. Roberts,* 131 Wis. 659, at p. 672, 111 N. W. 701, an instrument restricting the use of land was held to be such a "conveyance."

Such a lien is by some authorities apparently spoken of as an interest in property (*See v. Kolodny,* 227 Mass. 446, 116 N. E. 888) ; while on the other hand, in *Aya v. Morson,* 90 Oreg. 647, 178 Pac. 207, it was held that under the Oregon law neither mortgages nor liens are real property or any interest therein.   Authorities both ways are cited in 40 Corp. Jur. 40.   And the rule is stated in 18 Ruling Case Law, 873, to the effect that such lien is not an interest in land, being akin to a labor lien at common law.

In view of the kinship between such a labor and material lien for building, and mechanics' liens and liens for labor on personal property at common law and under our statutes, and all of which are found in the one chapter, 289; that the form in which such claim for lien is required to be under our statute, sec. 289.08, is not specifically required to have any acknowledgment or any of the other formalities as to execution as above suggested; that such a claim, in order that it be enforced, must be asserted within a very limited time, in no event exceeding six months from the last charge for labor or materials as prescribed by sec. 289.06; from the quite

uniform practice under such lien statute, of which practice we feel we can take judicial notice, that no such formalities have been heretofore required or used,—we are of the opinion that the document or release here in question, executed as it was by the general manager of the corporation, the same person who, on behalf of the plaintiff, verified the complaint herein, was a sufficient document to effect the purpose declared on its face.

It is further urged that there should be at least a hearing in the court below upon the suggested question as to whether or not Londo was in this particular transaction the agent of the defendants *Acker,* and therefore requiring a placing of the consequences of his fraud upon them rather than upon the plaintiff. We feel, however, that the plaintiff is foreclosed, upon the facts as to the relative situation of all three to the transaction, so that it cannot now be heard to assert that there was such a possible relationship of principal and agent between defendants *Acker* and Londo, making such inquiry material.

*By the Court.*—Order affirmed.

STEVENS, J., took no part.