Dorothy BROWN, one and the same person as Sheila Brownley, Appellant

(Defendant below),

v.

STATE of Wyoming, Appellee (Plaintiff below).

No. 2864.

Supreme Court of Wyoming.

March 24, 1959.

336 Pac.2d 794

14

Walter A. Muir, Rock Springs, C. L. Bates, Rawlins, for appellant.

Thomas O. Miller, Atty. Gen., Glenn A. Williams, Asst. Atty. Gen., for appellee.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

16

18

·OPINION.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case the County and Prosecuting Attorney of Carbon County, Wyoming, filed an information on September 16, 1957, charging that Sheila Brownley on August 26, 1957, did "unlawfully, maliciously and in a rude, insolent and angry manner, unlawfully touch, shoot, and wound a human being, to wit: Evan Augustine Sanchez, with a .45 caliber automatic pistol with intent then and there to commit a felony, to wit: to kill said Evan Augustine Sanchez, with purpose and maliciousness, but without premeditation." The defendant, Sheila Brownley, whose true name was stipulated to be Dorothy Brown, pleaded not guilty to the charge. The case was tried to a jury commencing on April 14, 1958. The jury found the defendant guilty of aggravated assault and battery. She was sentenced to six months in jail. From the verdict and judgment of the court an appeal has been taken to this court.

It is admitted herein that the prosecuting witness, Evan Augustine Sanchez, hereafter referred to as Sanchez, was shot in the lower abdomen by the pistol mentioned in the information while it was in the hands of the defendant. He was seriously wounded, was in the hospital for 2½ to 3 months and had two operations performed upon him, in the second of which the bullet which entered his body was extracted. The shooting occurred in what is called the Paris Rooms situated in the city of Rawlins in this state.

A number of exhibits were introduced in evidence, including a map of the Paris Rooms. None of these exhibits are in the record before us so that the jury must have had a somewhat better understanding of some of the evidence than this court could have in the absence of such exhibits.

The evidence in the case was extremely conflicting.

It is hardly necessary to set out anything more than the main facts testified to by Sanchez and by the defendant. Sanchez testified that he was informed that the Paris Rooms were open. He went there on August 26, 1957, at about 8:00 p.m. He rang the doorbell. The defendant came out and asked what he wanted and the witness told her that he wanted a "woman". She asked the witness if he had ten dollars and the witness stated that he did. The witness then asked her if there was a woman there and the defendant told him she was the only one. The witness gave her ten dollars and he and the defendant went into the bedroom where, as may be inferentially gathered, the defendant and the witness had sexual intercourse. During that time, apparently, the witness talked to her about the illegality of prostitution, inferring or stating directly that defendant was a prostitute. After the parties had sexual intercourse, the defendant got the gun mentioned in the information from a drawer in a closet which led off from the kitchen in the building. Because of that gun, seen by the witness, he attempted to lock her up in the closet, but since it had no lock which would hold he let her out. "I decided I couldn't lock her in there and if she wanted to shoot she could shoot me anyhow." Defendant told him to get out and he said that he would. He walked down the hall in the building, scared, with his back to the defendant, toward the outside door with his hands raised high. When he got to the door he let his arms fall, perhaps for the purpose of opening the door, and the defendant shot him. He fell down or sat down and while so down the defendant "nudged" him, told him to get out, and shortly thereafter he got up, opened the door, got in his car and drove to what he thought was a hospital but went to the nurses' home where he became unconscious and where he was found by police officers later.

He stated that he never touched the defendant in any way except when they were in bed together.

The defendant denied having asked for or received any money. She testified that she leased the Paris Rooms which had five bedrooms, two sitting rooms and a bathroom, kitchen and pantry. On the evening of August 26, 1957, she went to the door when the doorbell rang. The prosecuting witness stated that he was looking for a "girl". The defendant said that there were no girls there but the prosecuting witness stated that she would do. She told him that she was menstruating at the time and could have no intercourse with a man in any event at that time. Sanchez, however, said he did not care about that, grabbed her and pushed her into the bedroom. The defendant stated that he pushed her over to the foot of the bed, fell on top of her, put his arm across her throat so that she couldn't breathe and that they wrestled on the bed. She stated that the prosecuting witness hit her and kicked her, that she was half-unconscious during the affray, that the prosecuting witness either raped her or attempted to rape her, that she finally got loose, got hold of the gun in question and told him to get out. When near the door leading to the outside, the prosecuting witness grabbed her and the gun went off accidentally.

Counsel for defendant have epitomized the main part of defendant's testimony as to what took place subsequent to the time when she and Sanchez got out of bed as follows:

"* * * I glanced over in this drawer which was open and I saw a gun laying there so I picked it up. I though maybe I could scare him or something into leaving. I had locked myself in the bedroom from the inside. I heard my dog crying and I

opened the door and the dog ran into my bedroom, and Sanchez saw the gun and I told him you better leave now and I closed the bedroom door again. And then I stood there for a couple of minutes or I don't know just exactly how long I stood there exactly and I heard a door slam so I thought he had gone out but when I got out and I wanted to go in the kitchen and get to the telephone because the phone was in the kitchen, it was a pay phone and I had to go in the kitchen to get to the phone for help. When I opened up the bedroom door I didn't see anybody. The kitchen door was closed but I thought he had gone on out so I walked on out into the kitchen and when I got past the door out of the corner of my eye I seen him hiding in the pantry so I jumped out in the center of the kitchen as far as I could and told him to come out of there and get on out of the house. No door on pantry in kitchen. Door of bedroom opens into kitchen. No door on pantry. He was behind the door inside the pantry. There is a little wall there but the wall does not have a door in it. He was behind this wall and behind the door that—the bedroom door. Then I told him to get out and so he came out of there and he started up to the front and I followed him and I had the gun in my hand. I never laid it down and I got up to the front door and I don't know why but instead of telling him to open the door I reached over with my left hand to open the door. When I reached to open outside door at staircase he lunged at me like he was going to take the gun away from me and the gun went off. * * *"

It is obvious from this brief statement of facts that the evidence was totally conflicting. It is not for this court to resolve that conflict. That was the duty of the jury. We cannot interfere with their verdict, even if we might think that the conflict was resolved wrongly. There is no merit in the contention of counsel for the defendant that the defendant's testimony must be taken as true in view of the fact that Sanchez

was not called to rebut it. If the version of Sanchez as to what took place is true, then it follows that the testimony of defendant cannot be true, except insofar as it agrees with that of Sanchez.

The record fails to disclose the relative physical strength of the prosecuting witness and the defendant, a matter of some importance in view of the defense herein. The jury saw them both on the witness stand. For aught we know, Sanchez was small and puny while the defendant was physically strong, thus causing the jury to disbelieve her testimony for that reason alone.

We might incidentally mention that the prosecuting witness was 21 years of age, had been in the Basin Industrial School at Worland, Wyoming, and also in the reformatory at El Reno, Oklahoma, and had been in jail a number of times in Rawlins. It was probably this fact, among others, which induced the jury to find a verdict merely of aggravated assault and battery.

1. It is contended by counsel for the defendant that the court erred in overruling the motion for a directed verdict in favor of the defendant and that the evidence was insufficient to convict her, particularly in that there was no showing of any malice or intent on the part of the defendant to shoot or injure Sanchez. We cannot agree with counsel for the defendant. They refer in the main to the testimony of the defendant and ignore the testimony of Sanchez. In considering the point here urged, we must, in accordance with a well-known rule, disregard the testimony of the defendant insofar as inconsistent with the testimony of Sanchez and consider only the testimony which tends

to show the guilt of the defendant. When the defendant got the pistol mentioned in the information herein, she was almost if not quite, according to her own testimony, out of danger, if ever she was in any. According to Sanchez, he was scared. He held up his hands. When told to get out of the house he agreed. He started down the hall of the building which was some 40 feet in length with his back to the defendant in order to go out of the front door of the building. Defendant followed with the gun in hand just as a hunter stalks his prey. When they got to the front door and Sanchez lowered his hands, perhaps to open the door, she shot him, inflicting a wound which doubtless would have been fatal had it not been for the timely operation upon Sanchez by Dr. Paul. Sanchez fell or sank down on the floor. Instead of helping the boy, who was almost mortally wounded, she nudged him to get out, which he did shortly thereafter. This testimony was, we think, more than ample to justify the jury in finding that the defendant in inflicting the injury upon Sanchez acted maliciously and with intent to injure him. See 41 C.J.S. Homicide § 316, p. 27. It is true that Sanchez testified that when he let his hands fall down when they reached the outer door he "guessed" she got excited. But the jury were not compelled to accept that interpretation.

We do not, and the jury evidently did not, judging from their verdict of a comparatively minor offense, overlook the fact that any woman, even one who is "plying her trade", would resent the crude, insolent manner in which Sanchez referred to her, whose favors he sought, as a prostitute. The jury doubtless would have overlooked a moderate punishment inflicted upon him, but for the defendant to carry her resentment to

the extent indicated by the testimony cannot be condoned. The contention above mentioned is overruled.

2. Counsel for defendant and appellant contend that it was error for the court to give Instruction 17 which reads as follows:

"The Court instructs the jury that in weighing the evidence in a case of this kind, it is within the province of the jury to take into consideration your own knowledge and experience in arriving at your conclusions."

Counsel contend that the jury can only consider knowledge and experience which they possess in common with mankind in general and that contention is well taken. See Annotations on the subject in 144 A.L.R. 932 and 104 A.L.R. 1017. See also Casper Lodge No. 22, I.O.O.F., etc. v. Corbridge, 74 Wyo. 244, 286 P.2d 1047, 1056. There can be no doubt that jurors may not act upon knowledge of a particular fact known only to themselves. 53 Am.Jur. Trial § 819, p. 602. How far a court may go in connection with an instruction on this subject without committing reversible error is not altogether clear. The expressions used by the courts and authorities generally are not altogether uniform. Thus it is said in 53 Am.Jur. Trial § 913, p. 656, that jurors "may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved." In Rosenbaum v. State, 33 Ala. 354, it is said that an instruction is not erroneous which tells the jury that they may consult their general knowledge and their own experience in life in a criminal case. In Heal v. Stoll, 176 Wis. 137, 185 N.W. 242, 246, it is said that a jury is not bound "to ignore entirely their own knowledge and experience with re-

spect to the elements which combine to constitute the value of the land." In State ex rel. State Highway Commission v. Stoddard Gin Co., Mo.App., 62 S. W.2d 940, the court said that it was not error to tell the jury that they might take into consideration their own experience and observation in the common affairs of life.

It would have been better if the instruction complained of in this case had directed the jury that they might consider their knowledge and experience in common with mankind in general and the instruction given herein, we think, should be avoided in the future. Still we must determine as to whether or not the giving of the instruction as it reads was reversible error and whether it affected the substantial rights of the defendant. We must in this connection consider Instruction 25 which reads as follows:

"It is your duty as jurors to decide this case upon the law and on the evidence as you have heard it here in Court, and when you retire to the jury room you should not refer to, discuss or consider anything in connection with the case except the evidence received upon the trial and the instructions of the Court. All extraneous matters, statements and suggestions should be carefully disregarded by you, and you should base your verdict solely upon the evidence, and guided by these instructions alone."

If the jury had received the impression from Instruction 17 that they could act upon their own personal knowledge of a particular fact known only to themselves, it would have been reversible error, but the instruction does not go that far. It specifically states that the knowledge and experience which the jurors have is limited to weighing the evidence in this case. Instruction 25 specifically states that they cannot re-

fer to, discuss or consider anything except the evidence received in the trial of the case. Thus that instruction substantially specifically instructs the jury that they cannot act upon knowledge of a particular fact known only to themselves. Taking the two instructions together, we do not think that we can say that the giving of Instruction 17 is reversible error or affected the substantial rights of the defendant.

3. Perhaps the most troublesome question in the case is as to whether or not the court should have given Instruction A asked by defendant reading as follows:

"You are instructed that a person may lawfully arm herself in reasonable anticipation of a dangerous attack and the mere fact of arming does not justify an inference that it was done for the purpose of attacking Evan Augustine Sanchez.

"Therefore if you find that the defendant, Dorothy Brown, armed herself in reasonable anticipation of a dangerous attack by Evan Augustine Sanchez, this fact does not deprive the defendant of the right of self-defense nor may you infer from this fact alone that she held the gun for any other purpose than to defend herself."

The court refused to give it and this is claimed to be reversible error. Instead the court gave Instructions 18 and 19 reading as follows:

"Instruction No. 18. The Court instructs the jury that the right to defend one's self against danger, not of his own seeking, is a right which the law not only concedes but guarantees to all men. The defendant may, therefore, have shot her assailant, either accidentally or intentionally, and still be innocent of any offense against the law. If, at the time she shot the prosecuting wit-

ness, you find from the evidence that she had reasonable cause to apprehend on the part of the prosecuting witness a design to do her serious personal injury, and there was reasonable cause for her to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger, she shot, and at the time she did so, she had reasonable cause to believe, and did believe, it necessary for her to shoot in the way she did to protect herself from such apprehended danger, then, and in that case, the assault was not felonious, but was justifiable, and you ought to acquit her upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been in fact actual or real, or that the danger should have been impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts. But, before you acquit on the ground of self-defense, you ought to believe that the defendant's cause of fear and apprehension appeared, at the time, reasonable to her."

"Instruction No. 19. The Court instructs the jury that if you believe, from the evidence, that the defendant, Sheila Brownley, was acting in self-fense, believing that she was in imminent danger of serious bodily harm or injury, as elsewhere explained in these Instructions, and that she continued to act in self-defense, at the time she fired the shot in question, then defendant would be entitled to an acquittal. Under the law of self-defense, a person has the right to defend herself, and to fire a shot at her assailant, so long as the danger of serious bodily harm or injury to her person, real or apparent, considered from the defendant's standpoint, continues to exist. If the defendant fired the shot in question in self-defense, as explained in these Instructions, or if the gun was accidentally discharged, at the time the prosecuting witness, Evan Augustine Sanchez, was shot, you should find the defendant not guilty."

The asked instruction was probably taken from what we said in State v. Bristol, 53 Wyo. 304, 84 P.2d 757, 761, 762, reading as follows:

"It has been held that one may lawfully arm himself in reasonable anticipation of a dangerous attack. * * * To do so may, of course, have a tendency to show the state of mind of the defendant, although it has been held that the mere fact of arming does not justify the inference that this was done for the purpose of attacking the deceased. * * *"

The Bristol case did not involve any instruction on the subject. What was said was in connection with the question as to whether or not Bristol was the aggressor. If any instruction similar to that asked is given it should probably characterize the "dangerous attack" more particularly, as, for example, the instruction which was held should have been given in State v. Burkett, 30 N.M. 382, 234 P. 681, 685, where the instruction asked reads as follows:

" 'You are instructed that one who has reasonable grounds to believe that another will unlawfully attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.' "

The law relating to the duty of the court to give an instruction on the right of the accused to arm himself is stated in 41 C.J.S. Homicide § 378 c (4), pp. 177, 178, as follows:

"Where the court restricts the issue of self-defense by submitting the issue of provoking the difficulty, as considered supra subdivision b of this

section, it should also instruct the jury as to accused's right to arm himself in anticipation of danger, and, where such an instruction is warranted by the evidence, a refusal to give it constitutes error. Such an instruction, however, is neither necessary nor proper where such an issue is not raised by the evidence in the case, as where the evidence shows that, although accused was carrying a weapon at the time, he was doing so merely as was his usual custom, and not in anticipation of danger from deceased; nor is such an instruction required where the court instructs as to self-defense without any limitation as to provoking the difficulty."

This statement is contained under the subject of homicide but we think it would be also applicable here. The court in State v. Burkett, supra, in referring to this statement, states as follows at 234 P. 685:

"Examining the numerous Texas decisions cited to this section, we find the distinction very clearly drawn between cases wherein the instructions gave the defendant the perfect right of self-defense, and those in which such right was abridged or limited by the instructions by submitting the issue of provoking the difficulty. In the former class of cases it is not necessary to instruct as to the right of the defendant to arm himself in anticipation of attack. Smith v. State, 81 Tex.Cr. 368, 195 S.W. 595. But otherwise in the latter class of cases. Brown v. State, 85 Tex.Cr. 493, 213 S.W. 658."

Special circumstances might require the court to give an instruction on the right of one to arm himself. See, for instance, Bevley v. Commonwealth, 185 Va. 210, 38 SE.2d. 331. We know of no special circumstance in this case.

It is at least doubtful that the asked instruction fitted the facts appearing herein. The attack by Sanchez to which the defendant testified was over. Sanchez had apparently gratified the purpose for which he had come. The defendant testified that after she got the gun the defendant was in the pantry. She did not claim that she then apprehended a second attack. According to her, she ordered Sanchez to leave which he proceeded to do. She followed him at a distance of six feet with the gun in her hand. She did not remember whether or not he held his hands up, so that we may accept the testimony of Sanchez that in fact he did so. When they arrived at the front door defendant stated that she reached to open the door but that Sanchez lunged "like he was going to take the gun away from me". This hardly shows or indicates that, as stated in asked Instruction A, there was any reasonable anticipation on her part of a second dangerous attack upon her.

Furthermore, the instructions given by the court on self-defense stated that under the facts mentioned therein the defendant had a right to shoot and kill if necessary. That right necessarily included the right to arm herself. That is doubtless the reason why it is stated in 41 C.J.S. Homicide § 378 c (4), p. 178, that it is not necessary to give an instruction on the right to arm one's self where the court instructs as to self-defense without any limitation as to provoking the difficulty. No instruction on the subject of provoking the difficulty was given in the case at bar, and we, accordingly, see no reason why we should not accept the rule as stated above, and so we cannot hold that the refusal to give Instruction A was reversible error.

4. Counsel for defendant complain of the giving of Instructions 6 and 7. These instructions relate to assault with intent to commit murder or manslaughter. All that need be said as to these instructions is that in view of the fact that the defendant was not convicted of either of these offenses they were not prejudicial.

Counsel for defendant also complain of the giving of Instruction 10 which reads in part as follows:

"You are further instructed that the intent to kill is not an element of either aggravated assault and battery or simple assault and battery, and the defendant may be found guilty of either of these two crimes even though you should find from the evidence that she did not intend to kill Evan Augustine Sanchez, provided, of course, that you find from all the evidence, beyond a reasonable doubt, *the presence of all the other facts which are necessary to constitute these crimes.*" (Emphasis supplied.)

Counsel say that this instruction should not have left the jury to speculate or guess what the court meant by "the presence of all the other facts which are necessary to constitute these crimes." We think, however, that the court's instruction in that respect is sufficient and was covered by two instructions of the court.

In view of what we have said, it follows that the conviction and judgment of the court herein must be and are affirmed.

Affirmed.