**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William B. TRIGG, Defendant-Appellant.**

**No. 15868.**

United States Court of Appeals
Seventh Circuit.

Feb. 16, 1968.

Certiorari Denied May 27, 1968.

See 88 S.Ct. 1863.

John J. Cleary, Lewis A. Wenzell, Chicago, Ill., William B. Trigg, pro se, for appellant.

Edward V. Hanrahan, U. S. Atty., Robert J. Weber, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel.

Before CASTLE, SWYGERT and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

The defendant-appellant, William B. Trigg, prosecutes this appeal from the judgment of conviction and sentence entered following a jury trial on a six-count indictment charging him and a co-defendant, Weldon Burris, with violations of the federal narcotic laws (26 U.S.C.A. § 4705(a) and 21 U.S.C.A. § 174). The defendant was convicted on all six counts and sentenced to concurrent twenty-year terms of imprisonment.

The defendant predicates the existence of prejudicial error requiring a reversal on the grounds that (1) he was denied the effective assistance of counsel and deprived of the right to be represented by counsel of his own choice; (2) extrajudicial information, adverse to the defendant, received by the trial judge served to disqualify the judge for prejudice and to invalidate the sentence for lack of due process; (3) the giving of a "flight" instruction constituted plain error; and (4) he was denied the production of a memorandum report made by a government-agent witness, in contravention of 18 U.S.C.A. § 3500.

The indictment, which charged the defendant with the unlawful possession and transfer of narcotics on three occasions, was filed September 10, 1964. When the case was called for trial on September 14, 1965, the counsel whom the defendant had selected and retained withdrew. He was succeeded in October 1965 by a second counsel selected by the defendant. The trial was subsequently set for Monday, May 2, 1966. On April 29, 1966, the preceding Friday, the defendant's second retained counsel sought leave to withdraw. Defendant advised the court that a third attorney he had contacted declined to take cases in federal court. The court questioned the defendant concerning his financial status and determined to appoint counsel for him. On May 2, 1966, it developed that the attorney first selected for appointment was then engaged in a state court matter. The defendant informed the court that he was to meet with the attorney that night, and stated:

"I hope we can get together where we can start this tomorrow. I am anxious to get this thing started and have been for the last year and a half."

The case was held for trial and the court proceeded with its motion call. Following completion of the motion call the court was advised that the attorney was then engaged in the selection of the jury in the state court case. The court then appointed Attorney Stanley Bass [1] to represent the defendant, continued the case until ten o'clock the following morning, and after receiving assurances from Bass that he was ready to proceed, and after the defendant had expressed his willingness to go ahead, granted the motion of defendant's second counsel to withdraw.

The defendant does not question the competency of his court-appointed trial counsel but urges that his Sixth Amendment right to the effective assistance of counsel was violated in that he did not have a fair opportunity and reasonable time to select counsel of his own choice; that Attorney Bass' previous association with the trial judge as a law clerk raises the possibility of a conflict in interest which could serve to dilute Bass' devotion to the interests of his client; and that Bass was not afforded sufficient opportunity to prepare for trial.

On the record before us none of these contentions possess merit. Defendant made no objection to the appointment of Bass as his counsel; he did not request additional time in which to seek to engage counsel of his own choice, but to the contrary expressed anxiety that the trial get started; and the examination into his financial status did not reveal any present ability to compensate any attorney he might seek to employ.

The defendant's "conflict of interest" argument is wholly conjectural and speculative, without factual foundation, and appears to be premised on an unfounded assumption that the natural reaction of a judge's former law clerk in such a setting would be such as would tend to preclude or embarrass him in effectively representing his client. The efforts of Bass on behalf of the defendant reflected by the record herein belie any basis for a conclusion that some mistaken sense of loyalty to the trial judge prompted Bass to "pull any punches" in conducting the defense or served in any manner to dilute that full devotion to the interests of his client his acceptance of the appointment demanded.

And, the fact that counsel was appointed on one day and the trial commenced the next does not serve to demonstrate, as a matter of law, that counsel did not have adequate opportunity to consult with his client, appraise defense strategy, and prepare to proceed accordingly. Grant v. United States, 9 Cir.,

1. Attorney Bass had served as a law clerk for the trial judge. He had left that position the preceding September. At the time of his appointment as defendant's counsel he stated he had no recollection of any proceedings in the case. Upon inquiry by the court the government stated it had no objection to the appointment.

371 F.2d 400, 401. That Attorney Bass made no request for a further continuance of the trial date is of itself a circumstance which evidences that further time was unnecessary to an adequate representation of the defendant. Defendant points to nothing indicating any element of prejudice resulting from lack of time for the preparation of such defense as was available. Moreover, it was not until two days after Bass was in the case that opening arguments were made, and then the government proceeded to present its case-in-chief which extended intermittently over a thirteen day period. It does not appear that the trial proceeded at such a pace as to precipitate prejudice to the defense due to time limitations.

Defendant's claim of prejudice on the part of the trial judge is based on statements made by the judge to counsel but out of the presence of the jury. At an interim hearing out of the presence of the jury it was recognized that an informer mentioned in a government witness' testimony was deceased. In this connection the judge volunteered the information that he knew from "other sources that not only is Kelly dead but that presumably at the scene of his murder was Trigg's wife" and "that he [the defendant] had been seen at or close to the scene prior thereto". After both sides had rested the court commented that he thought he might know more about the background of the defendants than the prosecutor did, and that he recognized that both state and local police officers had substantial dossiers on both defendants covering a long period. At the time of sentencing the court alluded to matters unfavorable to the defendant which he stated were not contained in the pre-sentence report.

■ Other than the statements referred to above the statements relied upon by the defendant to evidence disqualifying prejudice on the part of the trial judge do not involve or disclose the court's possession of extra-judicial information adverse to the defendant. They were statements made out of the presence of the jury, and which related only to expression of the court's appraisal of evidence adduced during the trial, which expressions were made in contexts which show relevancy of the comments to matters then under discussion with counsel, or related to the court's characterization of the content of the presentence report. They afford no basis for the imputation of prejudice because of extra-judicial information adverse to the defendant. As we had occasion to point out in United States v. Bolden, 7 Cir., 355 F.2d 453, 456:

"An opinion as to what the evidence has demonstrated cannot be equated with personal bias. Trial judges are invariably called upon to conduct impartial trials despite whatever opinion they may have or which they may formulate during the course of the trial concerning the guilt or innocence of an accused. Such impartiality is precisely what is expected of them, and an experienced trial judge must be assumed capable of performing his essential function. In short, prejudice must be shown by trial conduct; it may not be presumed or inferred from the subjective views of the judge."

■ And the above observation applies equally to extra-judicial knowledge on the part of the trial judge not communicated to the jury. The comment relative to the "presumed" circumstances of the informer's death related to an extraneous matter. It served no proper purpose within the context of the issues in the case before the court. But, more important, and decisive here, the information was not communicated to the jury and there is nothing in the record which reflects that this extra-judicial information possessed by the court in any manner operated to the prejudice of the defendant. That the court either through candor or inadvertence conveyed the information to counsel certainly is no no basis for assuming prejudice. In the context here involved, lacking discernible bias or prejudice affecting the rulings of the court or the verdict of the jury, the defendant's contention is not well taken.

Cf. United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778.

■ The defendant contends that use by the trial court of outside information from non-identified sources in arriving at the sentence to be imposed, and denial of access by the defendant to the pre-sentence report, constituted a denial of due process in sentencing. Unlike Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, relied upon by the defendant, the record here warrants no conclusion that the defendant "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue". The court referred to the pre-sentence report prepared by the probation department, information obtained from other sources, including the prosecutor's file, and to its own observations during the trial. In pointing out that the pre-sentence report did not contain certain of the information disclosed from other sources the court carefully distinguished those matters with respect to which it had information but which it would be improper to consider in arriving at the sentence to be imposed. That some of the considerations affecting the court's exercise of informed discretion in fixing the sentence did not stem from the pre-sentence report or from what the court observed from trial demeanor or testimony does not, of itself, invalidate the sentence. The theory of the law set out in Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, does not require such a narrow approach.

In *Williams* it is further recognized that the fixing of the sentence to be imposed does not involve an issue subject to "trial" procedures but is a matter which makes it necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial itself.

■ We perceive no basis for concluding that due process demands that the defendant be afforded access to the pre-sentence report. Hoover v. United States, 10 Cir., 268 F.2d 787, 790, points out that it is not required that a defendant be afforded opportunity to contradict or rebut the statements in such a report. Moreover, it appears from the record that the matters unfavorable to the defendant to which the court gave consideration, with the exception of a state court conviction the court itself disclosed, were disclosed by the prosecution in its recommendations to the court concerning the sentence.

■ Defendant posits plain error on the giving of a "flight" instruction. Although the record discloses a stronger evidential foundation for the instruction given insofar as application to the co-defendant Burris is concerned,[2] there is evidence of conduct on the part of the defendant which warranted an inference that when he became apprehensive of the presence of a law enforcement officer he immediately took steps to avoid him. The giving of the instruction was not error, much less "plain error" within the purview of Rule 52(b) of the Federal Rules of Criminal Procedure. At the time the instruction was proposed by the government, defendant's counsel raised no objection other than to suggest a modification of the instruction by an addition thereto. The court added the qualifying phrase, "if you find flight of a defendant" and counsel expressed no dissatisfaction with the instruction as so modified. Under the circumstances, the defendant is in no position to assert error in connection with the giving of the instruction. White v. United States, 9 Cir., 315 F.2d 113, 115; United States v. Vasen, 7 Cir., 222 F.2d 3.

It was not until after the close of the government's case on May 16, 1966, that defendant moved for the production, under 35 U.S.C.A. § 3500, of a memorandum report which had been made

2. See: United States v. Burris, 7 Cir., 393 F.2d 81.

July 10, 1964, by government agent Hughes, who had earlier testified for the government and who was cross-examined on May 13, 1966. Hughes' testimony did not relate to any events which occurred prior to July 20, 1964.

Under the provisions of § 3500 certain statements are to be produced for impeachment purposes. The purpose of § 3500 was to delimit the possible reach of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. This is pointed out in Palermo v. United States, 360 U.S. 343, 345, 347 and 350, 79 S.Ct. 1217, 1221, 3 L.Ed.2d 1287, which in further appraisal of *Jencks* states that "[t]hese statements were therefore to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, * * *".

We therefore find no error in the court's denial of the defendant's request for production of the report in question. In the light of the only proper use the defendant could make of the content of such report—its utilization in the cross-examination of Hughes for impeachment purposes—the motion for its production was not timely made. United States v. Hoffman, 7 Cir., 385 F.2d 501. Moreover, the report was beyond the scope of § 3500. It had been made July 10, 1964, and Hughes' testimony on direct examination embraced no event occurring prior to July 20, 1964. The report therefore did not relate to the events and activities testified to by the witness on direct examination. Cf. United States v. Cardillo, 2 Cir., 316 F.2d 606, 615.

Attorney John J. Cleary, a member of the Chicago, Illinois, bar, ably represented the defendant in this Court pursuant to our appointment. We express our appreciation to him for the services he rendered in this assignment.

The District Court's judgment order of conviction and sentence of the defendant is affirmed.

Affirmed.