**UNITED STATES of America,
Appellee,**

v.

**Ronald Ames MAYERSOHN, Appellant.**

**No. 660, Docket 33259.**

United States Court of Appeals
Second Circuit.

Argued June 16, 1969.

Decided July 23, 1969.

Stanley J. Reiben, New York City, (Abraham Glasser, New York City, of counsel), for appellant.

Vincent J. Favorito, Asst. U. S. Atty. (Vincent T. McCarthy, U. S. Atty. for the Eastern District of New York, of counsel), for appellee.

Before HAYS and FEINBERG, Circuit Judges, and JAMESON, District Judge.*

HAYS, Circuit Judge:

Ronald Ames Mayersohn appeals from a judgment of the United States District Court for the Eastern District of New York, convicting him, after a jury trial, on one count of evasion of military service by fraudulent claim of membership in a reserve unit and one count of making a false statement bearing upon his classification for military service, in violation of 50 U.S.C. App. § 462(a) (1964), as amended, 50 U.S.C. App. § 462(a) (Supp. IV 1965–68). We affirm the judgment.

### I.

Appellant registered with Local Board No. 6, Valley Stream, New York on September 27, 1960. He was classified I–A on February 8, 1962. During 1963 and 1964 appellant sought unsuccessfully to obtain first a hardship deferment and then a medical deferment. By the late summer or early fall of 1964, appellant no longer expected to be exempted from the draft on medical grounds. He telephoned several reserve units in the New York area but was told that they had no vacancies and long waiting lists. He then called Paul Miller, who was thought to have influence in getting men into the reserves, and arranged a meeting at Miller's apartment.

According to Miller's testimony, he told appellant that, in return for a payment of $3000, he could keep him out of the service by submitting a fraudulent Form DD 44 which would state that appellant was serving in a reserve unit. Miller said that the reserve unit would not hear of appellant and that the local board would give him the classification given to people in the reserves, I–D, after they received the Form DD44. Miller then wrote down appellant's name, address, date of birth, Selective Service number and local board number.

According to appellant's testimony, he believed that he was simply purchasing Miller's influence to get him into the reserves; he stated that he did not suspect that Miller would cause his draft board to receive fraudulent papers saying he was in the reserves. He said Miller told him that he would be put in a "control" unit which would mean that he would have an inactive reserve status until he was called for training or duty. He testified that he believed this description of the status Miller would obtain for him.

Evidence was adduced to show that appellant paid Miller by two checks, one for $2000 in late October, 1964, and one for $500 in January, 1965. It is undisputed that Miller gave Gottfried, his confederate, the information appellant had furnished and that Gottfried mailed a fraudulent Form DD 44 to appellant's local board for which act he was paid $200.

On October 15, 1964, appellant was ordered to report for induction on November 19, 1964. The local board received the fraudulent Form DD 44 on October 21. The form stated that appellant had enlisted in the reserves on October 16, 1964, and that he was serving satisfactorily with the 89th Air Terminal Squadron, Maguire Air Force Base, New Jersey. On October 22, 1964, the local board sent appellant a letter canceling the order of induction and on November 18, 1964, appellant was given classification of I–D which indicates that the registrant is serving in the reserves.

### II.

There was sufficient evidence for the case to go to the jury. In large measure the case hinged on whether the

* Of the District of Montana, sitting by designation.

jury believed Miller or appellant on the question of appellant's knowledge that the Form DD 44 sent to the local board was fraudulent. The jury could properly believe Miller and conclude that appellant was guilty beyond a reasonable doubt.

### III.

■ Appellant's primary contention on this appeal, as stated in his brief, is that he was denied a fair trial and effective assistance of counsel "by pervasive misconduct of the trial judge manifesting hostility to the defense, prejudged belief in the .defendant's guilt, disrespect towards and demeaning of defense counsel whose effective performance of his duties was thereby thwarted, and above all an unjudicial zeal in aid of the prosecution especially at the most vital junctures in the taking of the trial proofs, all of which must have conveyed to the jury too strong an impression of the Court's belief in the defendant's guilt to permit the jury freely to perform its own function of independent determination of the facts."

We have reviewed the record to ascertain whether appellant was prejudiced by the alleged incidents of judicial misconduct. It is true that the judge was occasionally rude to appellant's counsel and that he frequently interrupted appellant's counsel during the questioning of witnesses. However, it does not appear either that the judge took over such a large part of the trial as to deny defendant effective representation (see United States v. DeSisto, 289 F.2d 833 (2d Cir. 1961)) or that the character of his colloquies with counsel was such as to lead the jury to believe that in his opinion the defendant was guilty (see United States v. Guglielmini, 384 F.2d 602 (2d Cir. 1967)). Moreover, some of the judge's comments were provoked by counsel's irritating conduct.

### IV.

■ Appellant contends that he was prejudiced because the prosecutor in questioning defendant at trial, referred to a statement made by defendant which appeared in a probation report prepared before trial when defendant entered a guilty plea that was subsequently withdrawn. The use of this information was improper under Rule 32(c)(1) of the Federal Rules of Criminal Procedure. Cf. Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969). However, there was no way the jury could have known that the information was from a probation report or that the man to whom the statement was made was a probation officer. The jury could not have learned from this reference that appellant had previously pleaded guilty. Appellant's point does not entitle him to the relief he seeks.

■ Appellant reads Section 18 U.S. C. § 3500 (1964) too broadly in arguing that it entitles him to all materials relating to the activities of Miller and his confederate, Gottfried. Section 3500 only requires the production of statements relating to a witness' direct testimony. See United States v. Birnbaum, 337 F.2d 490 (2d Cir. 1964). The judge correctly applied Section 3500 in ruling on counsel's requests for statements in the possession of the government. Moreover, we have examined the statements which the judge refused to order the government to turn over and we find that they do not contain any material that appellant was entitled to have.

■ Miller's testimony about Gottfried and Gottfried's testimony were not hearsay and were admissible to prove the charge that appellant made a false statement affecting his classification for military service.

■ It was not improper for an F.B. I. agent to give hearsay testimony to the grand jury as to Miller's activities, rather than having Miller testify himself. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Moreover, the admonition of United States v. Umans, 368 F.2d 725, 730 (2d Cir. 1966), cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967), was

not violated. Here Miller was not called because he was a prospective defendant.

The charge as to accomplice testimony was very similar to the charge approved in United States v. Mattio, 388 F.2d 368 (2d Cir.), cert. denied, 390 U.S. 1043, 88 S.Ct. 1643, 20 L.Ed.2d 305 (1968).

Appellant's other contentions are equally without merit.

Appellant's assertion that the Selective Service Act is unconstitutional was not raised below and is made here without supporting argument. We deny his request that he be permitted to substantiate this contention after the American Civil Liberties Union has announced its contentions concerning the constitutionality of the Act.

Affirmed.