Arsenio Leroy FRESQUEZ, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 3926.

Supreme Court of Wyoming.

Dec. 30, 1971.

Vincent A. Ross, Cheyenne, for appellant.

C. A. Brimmer, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., James P. Horiskey, Franklin J. Smith, Asst. County Attys., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is an appeal from the verdict of a jury which found the appellant guilty of the crime of first-degree rape.

Appellant was charged with having carnal knowledge of a woman forcibly and against her will contrary to § 6–63, W.S. 1957 (1971 Cum.Supp.). The facts, which are not in controversy, disclose that the complaining witness was raped at a place approximately one mile west of Cheyenne just off the "Happy Jack" road at approximately 5:30 a. m. on July 25, 1969. The complaining witness, who was then 27 years old, and her husband had gone out for the evening. They had gone to two bars and lounges when at about 1:30 a. m. they received a call from the baby-sitter, at which time the husband left and returned home. There was also some indication that she and her husband had a quarrel but, in any event, he left and she stayed. She then went to the N.C.O. Club at Warren Air Force Base with two couples and a man identified only as "Jim." She stayed there until about 3:45 a. m. when she asked Jim to take her home. As they proceeded to her home there was some disagreement and she asked Jim to drop her off at an address in West Cheyenne, which address had been given her by a friend named "Carl" with whom she had visited while at the N.C.O. Club. Jim dropped her off and left. She was unable to locate the house with the address given to her and walked down the street looking for a phone but was unable to find one. At about 4 a. m. she saw two boys pushing a white colored car in an effort to get it started and asked them if they would drive her home. They got the car started and subsequently drove to the area west of Cheyenne where she was beaten and raped. After she had been raped she ran from the car and hailed a passing motorist on his way to work. She got into this man's car and called his attention to the car in which she said the rape took place. The witness said he saw a man run back to the car and the car was driven away. They followed the car on the Happy Jack road and into West Cheyenne where one man got out of the car and ran into or between a building. The witness continued to follow the car until it parked in a driveway at a residence in West Cheyenne. While following the car the complaining witness and the witness observed the license number of the vehicle, which the complaining witness described as a white two door Ford car and the witness described as a white Ford car.

The witness then drove the complaining witness to the police station where she reported the rape. Upon her arrival at the police station at about 5:45 a. m., the complaining witness was interviewed by Dale Terwilleger, a detective of the Cheyenne Police Department. He said she was almost hysterical, was crying and that he observed that she had bruises on her shoulders, left side of her face, a swollen left jaw, and that her left eye was swollen almost shut. She was then taken to the hospital where she was examined by a physician who testified that she was bruised on the face, and the area over the left jaw was so swollen that he thought the jaw may have been fractured but x-rays revealed that it was not. He examined her and determined there was sperm in her vagina.

As a result of the interview with the complaining witness, at about 7 a. m. detectives Terwilleger and Stewart went to the house where appellant was living with his parents and wife. This was apparently the same house at which the complaining witness and the witness said they saw the white Ford car park in the driveway.

Detective Terwilleger said he requested that appellant come to the police station,

which the appellant did. According to the detective, and there was no showing to the contrary, no questions were asked of the appellant nor did he make any statements until they arrived at the police station at which time the appellant was advised of his rights. Appellant was then questioned and denied that he knew anything of the incident. At 7:30 a. m. he was placed under arrest, and at about 9:55 a. m. the detective asked and received permission from the appellant to search his car and the incinerator at the house. A search was made but nothing incriminating was found. At about 10 a. m. the area where the rape occurred was searched, but again nothing was found. The complaining witness had said she had lost her purse, but apparently it was never found.

On July 28, 1969, the county attorney signed a criminal complaint against the appellant, and on July 30, 1969, he appeared with his counsel before a justice of the peace and was advised of his rights. The appellant requested a preliminary hearing which was held on August 1, 1969. The appellant was bound over to the district court, bond was set, posted, and he was released. On August 6, 1969, the county attorney filed an information in the district court, and on the 8th of August the appellant, with counsel, appeared before the district court and entered a plea of not guilty. Bond was set for appearance at trial and, bond having been posted, appellant was released.

The matter was heard before the district court sitting with a jury on June 29, 1970. During the trial the complaining witness identified the appellant as the person she first saw at about 4 a. m. the morning of the 25th in West Cheyenne and who, subsequently, in the company of another man, drove west of Cheyenne and raped her. After the state rested the appellant moved for an exclusion of all testimony of detective Terwilleger on the grounds that the arrest was illegal and the appellant had not been advised of his rights and, further, that the matter be dismissed because of improper lineup. Appellant further moved for a directed verdict on the ground that the State had failed to prove all essential elements of the crime. The trial court overruled the motions.

Whereupon appellant proceeded with his case and his testimony, together with that of witnesses called by him, revealed the following information about the appellant and his actions the night before and the morning of the incident. Appellant's defense was that he was not there and knew nothing of the incident. On that date he was 19 years old, married and had a little girl one month old, and they were living with his parents in West Cheyenne. On that date he owned a 1960 white Ford two door hardtop automobile. During the early evening of the 24th he and his wife went to a carnival. They met several friends there and about midnight they went to a beer party at "Round Top" which is a picnic area approximately seven miles west of Cheyenne. Upon returning from Round Top about 5:30 a. m. he drove on the Happy Jack road and into West Cheyenne. Several of appellant's witnesses said they saw appellant at Round Top as late as 5 or 5:30 a. m. Some of these witnesses did not have watches and estimated the time as it related to the time at 4 a. m. when a group left to drive one of the girls to Laramie. Appellant's mother testified that appellant and his wife returned home about 5:30 or 5:45 a. m.

After both parties rested, the jury deliberated and returned a verdict finding appellant guilty as charged. Whereupon, on July 16, 1970, the trial court, after examining the presentence report, sentenced appellant to confinement in the State Penitentiary for a period of not less than three nor more than five years. Appellant filed his notice of appeal on July 17, 1970, and subsequently his appeal bond was set at $10,000, which was posted and appellant released. Pursuant to various motions filed by the appellant extensions of time were granted, as was one motion by the appellee for extension of time for nine days. The matter became at issue on June 30, 1971,

and was heard in this court on October 18, 1971.

In a statement of points relied on for reversal the appellant set forth the following:

"1. The police took the defendant into custody at his home at the approximate hour of 7:00 A.M. Such action was illegal, without a warrant and without probable cause. The only information that the officers had at that time was that a car belonging to someone was parked outside the defendant's home. They didn't have identification of the assailant. They were not given any description of the assailant by the complaining witness when they had interrogated her at the police station. They didn't advise the defendant of his rights at the time and didn't tell him that he didn't have to go with them.

"2. At the time the defendant was taken to the police station, he was improperly displayed before the complaining witness on the pretense that she was going to the ladies room at the time she saw him, the same being an improper lineup procedure.

"3. The instruction which was offered by the defendant and not given and refused was as follows: 'If the evidence in this case is susceptible of two different constructions or interpretations each of which appears to you to be reasonable and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit the Defendant's innocence and reject that which points to his guilt.'

"4. Defendant's motion for acquittal at the end of defendant's case should have been granted. As a matter of law, the facts as presented fail to prove the essential elements of feasible [sic] rape charged in the information beyond a reasonable doubt."

## APPELLANT'S POINT NO. 1

■ We do not find that the appellant was questioned or volunteered any information prior to being advised of his rights. Appellant did not argue that he was not properly advised of his rights at the police station. His argument would have some merit had there been interrogation prior to the warning having been given.

■ Appellant further argued that the testimony of the police officer should be stricken because there was no warrant issued. He made no sound argument for this point, nor do we know of any holding that a person must be placed under arrest before he may be questioned.

Appellant further stated in his points relied on for reversal that the complaining witness had not given the police any description of her assailant prior to appellant's arrest. We do not find in the record any testimony bearing upon this point and none is cited to us by appellant. Even so, we fail to see the pertinence of the point.

## APPELLANT'S POINT NO. 2

■ The appellant cited two cases[1] for the proposition that a pretrial identification that is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification will be set aside.

In his brief appellant argued:

"It is obvious, by the testimony, that the Defendant was taken down to the police station to be exhibited by the police officers to the complaining witness and that she then identified him on the excuse that she was going to the ladies room as he supposedly was walking down the hall. This was improper arraignment, improper alinement and improper to show the defendant to the complaining witness without other parties of similar race and character being present in a lineup. * * *"

1. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; and Stov- all v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

This statement constituted a gross assumption on the part of appellant which found no support in the evidence. The appellant said that he did not see the complaining witness at the police station or at any time prior to the preliminary hearing. The complaining witness did see and recognize the appellant at the police station. There is nothing in the record to indicate there was anything other than an accidental meeting in the hall. It required a great deal of speculation to presume, as does counsel for appellant, that this was a prearranged confrontation to cause the complaining witness to pick the appellant as her assailant. On cross-examination the following questions were asked by appellant and answered by the complaining witness:

"Q. When is the last time you saw this boy, this so-called defendant? A. When I was at the police station I saw him.

"Q. Isn't it true the first time you saw this man was when the police department brought him into you so you saw him at the police department? A. I met him in the hall. I was going to the bathroom."

Detective Terwilleger, upon cross-examination, testified that he did not know whether the complaining witness had an opportunity to see the appellant at the police station. He was asked by the appellant, "Isn't it true you brought him in so she could point him out to you?" to which he replied "No." Thus, looking at the totality of the circumstances it does not appear that this was a deliberately arranged confrontation, and admission in evidence of the identification was not error, State v. Samora, 83 N.M. 222, 490 P.2d 480, 481, nor was there any showing that there was anything done by the police officers that was suggestive or conducive to mistaken identification.

In any event, the State did not use or even raise the issue of this identification in its presentation of the case. It was brought out solely by appellant during his direct testimony, and on cross-examination of the complaining witness and detective Terwilleger. It would seem doubtful that under these circumstances the appellant could be heard to complain.

## APPELLANT'S POINT NO. 3

Appellant argued that the trial court erred in refusing to give his requested Instructions A and B. Instruction A was contained almost verbatim in Instruction B. Appellant asked the court to instruct the jury that if the evidence was susceptible of two different constructions or interpretations, each of which is reasonable and one of which pointed to the guilt of the appellant and the other to his innocence, it was the jury's duty to adopt that interpretation which would admit appellant's innocence and reject that which pointed to his guilt. In support of his argument concerning this instruction he contended that the testimony showed he and his wife proceeded along the Happy Jack road at approximately the same time as did the assailant, and there could have been a mistaken identification.

Appellant cited four cases for his argument but an examination of them revealed that one does not stand for the proposition relied upon by him, and the other three cases related to situations where the evidence was wholly circumstantial. The requested instructions appear to be taken from CALJIC No. 26, Cal.Jury Inst.Crim. (1958). This has been superseded by CALJIC No. 2.01 (3d ed.). The new instruction, which contains part of the instruction offered by appellant, also contains a paragraph that makes it clear the instruction applies to circumstantial evidence. The notes in the 1958 edition make it equally clear that the instruction applies to circumstantial evidence. We have held that the trial court is required to give instructions on circumstantial evidence only when the State's case is entirely circumstantial or is wholly dependent upon such evidence, and such instruction is not required where the evidence is both circumstantial and direct. Ballinger v. State, Wyo., 437 P.2d 305, 309. Here the main thrust of the State's case was not circumstantial evidence but was the direct identification of the appellant

by the complaining witness. It is also noted that the trial court did, in another instruction, instruct the jury on the appellant's theory of the case; that is, "alibi," which instruction covered the issue presented by the proffered instructions. The trial court correctly refused the requested instructions.

## APPELLANT'S POINT NO. 4

Appellant argued that his motion for acquittal should have been granted since the evidence was subject to differing reasonable interpretations. He then cited various instances which would raise questions of the moral character of the complaining witness. Appellant cited no authority for his contention, perhaps because there appeared to be none.

We have repeatedly held that the credibility of a witness is for the jury [2] and that a conflict in the evidence as to alibi is for the jury in a rape case.[3] As we said in Opie v. State, Wyo., 389 P.2d 684, 686, reh. den. 422 P.2d 84, verdicts of acquittal are properly directed only when the trial court determines there is no substantial evidence to sustain the charges. Here the appellant did not argue that there was no substantial evidence, but merely contended there was a conflict in the evidence. It is clear from the record that there was substantial evidence upon which the jury could have made its finding. The jury has the duty to resolve conflicting evidence, and an appellate court cannot interfere with their verdict even if it might think the conflict was resolved wrongly. Brown v. State, 80 Wyo. 12, 336 P.2d 794, 797.

We have thoroughly and carefully reviewed the record and considered the points relied upon by appellant for reversal, and find no error. The record was also examined for any fundamental error but none was found. We are convinced that as to the State's presentation of the case the appellant was afforded a fair trial in every sense of the word.

Affirmed.

GRAY, J., concurs in the result.

2. Elmer v. State, Wyo., 463 P.2d 14, 17, reh. den. 466 P.2d 375, cert. den. 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82; Drummer v. State, Wyo., 366 P.2d 20, 23; Murdock v. State, Wyo., 351 P.2d 674, 678.

3. Elmer v. State, supra, 463 P.2d at 17.