Mike DeLUNA, Appellant (Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4082.

Supreme Court of Wyoming.

Oct. 18, 1972.

Ronald D. Vanderhoef and Dennis G. Bonner, of Lonabaugh & Bonner, Sheridan, for appellant.

Clarence A. Brimmer, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., Chey-

enne, James N. Wolfe, County Atty., Sheridan, for appellee.

Before McINTYRE, C. J., and PARKER and GUTHRIE, JJ:

Mr. Justice GUTHRIE delivered the opinion of the court.

Defendant appeals his conviction and sentence for the unlawful delivery of lysergic acid diethylamide (commonly called L.S.D.) to one Mildred Martin.

Mrs. Martin, the complaining witness, testified she had heard certain things which made her believe defendant might be involved in drug dealings. This caused her to make inquiry of the Sheridan Police Department and she talked to Officer Kelsey about this matter. She determined to find out if defendant was really dealing in drugs. She testified that she did this because she was a responsible citizen and had four children ranging from 20 to 27 years of age and would dread to think of their having drugs available. Commencing in June 1970 she had several conversations with defendant on the subject of drugs. She had no response to the first inquiry. She was away for several months and on her return in October again asked him about getting them. He replied at that time he could get anything she wanted but was afraid to because at that time he was being watched. This same conversation was repeated at least once thereafter until the last time on December 16 when she asked if he had anything yet to deliver. A date was made for such delivery the following night. She offered him $50 for anything he would bring—she did not care if it was marijuana, L.S.D., speed, heroin, or any other common drug. On December 17 immediately after he got off work he called her and told her he would be at her house at 6:30 p. m. He called at 6:30 and after finding she was alone came over in approximately ten minutes. When he arrived he told her, "I've got something I think you'll be interested in." He told her what to expect and that she would enjoy it. If she became frightened she was to use

the white pill which was contained in the larger of the two plastic bags he gave her; if she did not like these he would find something better. As she was about to deliver the money her door bell rang and a friend of hers, Roamy Taylor, came in.

She telephoned the police department immediately after defendant left and was told Kelsey was not there but they would notify him. Kelsey came over the next morning and she told him what had happened and delivered the pills to him. There were some green pills, white capsules, and white tablets. Defendant did not tell her what they were but told her if she had a bad experience with the small green pills and white capsules she was to take a white tablet.

After Officer Kelsey received the tablets he kept them in his possession until he delivered them to Officer Bohnsack, who in turn transmitted them to the State Laboratory at Laramie where analysis was made by Kenneth L. McMillan, a chemist. McMillan testified he received these tablets in mailing containers on December 21, which he opened, and after examination replaced them in the containers and resealed them on December 28. The analysis revealed the green tablets and white capsules each contained lysergic acid diethylamide (L.S.D.); that the small white tablets were Donnatal tablets and contained phenobarbital; that the larger white tablets contained methylquinalon. The tablets received were sent back to Bohnsack. Bohnsack said he received these tablets from McMillan on approximately December 23 and has kept them in his possession ever since that time.

Defendant denied he ever delivered any plastic bags or drugs to Mrs. Martin.

Three points are urged upon us as error and grounds for reversal. These are that the trial court erred in denying a motion for production of evidence; that the record does not disclose sufficient substantial credible evidence to support the verdict and judgment; and that there was a fail-

ure to lay a proper foundation for the admission into evidence of the drugs allegedly delivered.

■ Defendant was tried and the jury returned a guilty verdict on November 30, 1971. Judgment and sentence were passed on the defendant on December 6, 1971. Defendant then retained other counsel and on January 19, 1972, new counsel filed a motion for production of evidence, seeking to have the county attorney produce all information he had concerning a totally unconnected incident in which he alleged the complaining witness was involved, asserting that this might give information concerning the character of the complaining witness and affect her credibility. Although not mentioned in the motion, on this appeal defendant asserts his right thereto by virtue of Rule 18(c)(1), W.R. Cr.P. Even though the brief speaks of a statement, the motion only asks that the county attorney "produce and divulge information." This motion was heard February 17, 1972, at which time defendant was sworn as a witness and testified. At the conclusion thereof the court denied the motion on the ground the information would not have been relevant or material to the case. The court in its remarks at the time of the ruling also viewed the motion as untimely, not having been made at the trial, and having been waived because the incident was known to both defendant and counsel at the time of the trial. No discussion of the nature of the information sought is set out herein because it is a late-coming attack on the character of this witness.

Appellant's contention of error in connection with the failure to order the discovery asked for is based upon two suggested grounds: First, the failure to require production of evidence under Rule 18(c)(1); and second, the failure of the court to order the delivery to it of the evidence for inspection as required by Rule 18(c)(2), W.R.Cr.P. Rule 18(c)(1) is as follows:

"After a witness called by the State has testified on direct examination, the court shall, on motion of the defendant, order the State to produce any statement (as hereinafter defined) of the witness in the possession of the State which relates to subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

Our Rule 18(c)(1) is derived from Title 18, § 3500, U.S.C.A.; Titles 16–18, § 3500, p. 4429, U.S.C. (1970 Ed.), being the so-called Jencks Act, and substantially follows paragraph 4 of that Act. Under these circumstances there is abundant authority from federal courts upon this matter.

In support of the trial court's action the State asserts the evidence sought is not discoverable; that the request was not timely made; that the information sought was immaterial and irrelevant; and that the court exercised sound discretion in refusing the same. We shall not discuss the question whether the evidence sought was discoverable because of our disposal of this matter. However, this is not to be construed as an intimation that the information sought was discoverable under this rule.

This writer agrees wholly with the trial court that this had no materiality or relevance to this case. There is a limitation contained in the rule which makes it inapplicable, i. e., "to subject matter as to which the witness has testified." This hardly needs explanation or authority for understanding, but has been reiterated in the case of United States v. Mayersohn, 2 Cir., 413 F.2d 641, 643, certiorari denied 397 U.S. 906, 90 S.Ct. 903, 25 L.Ed.2d 87, referring to § 3500, supra. The necessity that the matter be relevant or relate to the subject is well recognized. Authority cited by appellant is Annotation, 7 A.L.R.3d 181, 187. A further reading of that annotation

would disclose this is generally a condition for discovery as set out thereunder, at 226, and the authorities cited.

The purpose of the so-called Jencks Act was discussed and recognized by the United States Supreme Court in Palermo v. United States, 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287, rehearing denied 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 94, when Justice Frankfurter said:

" * * * This section manifests the general statutory aim to restrict the use of such statements to impeachment. * * * "

The same thought is repeated later in a concurring opinion by Justice Brennan joined in by others of the court, appearing at 360 U.S. 365, 79 S.Ct. 1231:

" * * * that a defendant on trial should be entitled to statements helpful in the cross-examination of government witnesses who testify against him. * * * "

United States v. Trigg, 7 Cir., 392 F.2d 860, 865, certiorari denied 391 U.S. 961, 88 S.Ct. 1863, 20 L.Ed.2d 874, holds the discovery is only proper for use in cross-examination. This motion was untimely as it was filed after the defendant was found guilty, United States v. Kessler, 2 Cir., 253 F.2d 290, 292. It has been held that such motion is available only at the trial and not thereafter, Farnell v. Solicitor-General of United States, 5 Cir., 429 F.2d 1318. The case of United States v. Sacasas, 2 Cir., 381 F.2d 451, 454, demonstrates this view when it was held as not error to refuse such request made after the government had rested and the witness had been excused and had left the court house, citing § 3500, supra. For these reasons this contention is not sustainable.

■ In connection with the second assignment relied upon herein that there is not sufficient substantial credible evidence to support this conviction, the defendant asks us to disregard the testimony of the complaining witness above set out and attempts to reargue this matter to this court

as fact finders. It is amazing the amount of time and energy spent by this counsel and other counsel for various appellants seeking to have this court set aside the findings of juries on conflicting facts and the credibility of witnesses in light of the following cases: Fresquez v. State, Wyo., 492 P.2d 197, 202; Harris v. State, Wyo., 487 P.2d 800, 801; Brown v. State, 80 Wyo. 12, 336 P.2d 794, 797; and several other Wyoming cases.

Defendant bases his claim that the State failed to establish the necessary foundation of continued possession of the alleged drugs and the error admitting them on two legs. They are that the drugs had been "on the t.v. tray by the couch" from 6:40 p. m. until 9:10 a. m. the next day (December 18, 1970), and upon the testimony of Officer Bohnsack that he received back the alleged drugs on "approximately December 23" after McMillan had testified he had sealed and sent them back on December 28. This t.v. tray and the drugs allegedly delivered were in a living room in a private home and not a public place. There is evidence that Mrs. Martin's friend Roamy Taylor was in the home sometime that evening. Mrs. Martin, who received the plastic bags and was familiar with them and their contents, testified that she gave them to Officer Kelsey along with the contents.

Although Officer Bohnsack testified that he received them back on approximately December 23, he is definite that these were the packages and the pills he sent less those used for tests. People have and will continue to make mistakes about dates. Errors have and will be made in reporting in transcriptions. In addition, although the drugs had been out of her possession for some time after delivery to the police officer, Mrs. Martin noted at the time of the trial that she had seen these exhibits and they contained the same type drugs she received. Officer Bohnsack identified the containers as the same he sent for examination and which were returned to him; he testified that although he could not

identify the specific pills they appeared to be the ones he placed in these boxes. There was no cross-examination indicating there were any other pills mailed or received during this period which might have become confused with them. Further, there is no evidence or suggestion of any tampering by any person or persons.

▉ In consideration of this assignment we note our court has heretofore in passing said that the trial court's discretion as to what is sufficient foundation should not be too narrowly limited, Opie v. State, Wyo., 389 P.2d 684, 689; and see State v. Shilinsky, 248 Iowa 596, 81 N.W.2d 444, 447. In the admission of evidence such as this, the burden is upon the State to show there is a reasonable certainty the evidence has not been tampered with or altered and that it is the evidence upon which the prosecution bases its case, State v. Parker, 3 Conn.Cir. 598, 222 A.2d 582, 585; 29 Am. Jur.2d Evidence, § 774, p. 845; 2 Wharton's Criminal Evidence, § 675, p. 616 (12th Ed.). The basis of a proper foundation for such evidence is set out as follows:

"To warrant the admission in evidence of the instrument or weapon as the one with which a crime was committed, a prima facie showing of identity and connection with the crime is necessary and sufficient; clear, certain, and positive proof, or positive identification, is generally not required. * * *" 22A C.J.S. Criminal Law § 712, p. 961, and cases cited thereunder.

▉ Under the facts and circumstances herein mentioned we cannot say that the trial court could not be reasonably certain the evidence had not been tampered with or altered. It has been said the question for resolution is whether there was a reasonable probability that the evidence had not been the subject of tampering, Breed-ing v. State, 220 Md. 193, 151 A.2d 743, 747. There have been further holdings that the effect of an objection to the identify of evidence goes to its weight and probative value rather than its admissibility, 22A C.J.S. Criminal Law § 712, pp. 961–963.

The defendant relies on People v. Riser, 47 Cal.2d 566, 305 P.2d 1, appeal dismissed 358 U.S. 646, 79 S.Ct. 537, 3 L.Ed.2d 568, which we find consistent with our view, and which reiterates the test of a "reasonable certainty," leaving it in the hands of a trial court. There is no suggestion herein of tampering or any charge that these pills were changed or altered but defendant places his sole reliance on a *possibility* that these *could have been* tampered with rather than a probability.

▉ Defendant attempts some argument and in some manner to buttress his claim of error in connection with the admission of this evidence by a quotation from a textbook which appears to be an outline for law enforcement officers for a recommended procedure when an informer is used. He suggests the trial court erred in refusing to allow inquiry of what was standard police procedure in narcotic cases. The suggestion is made, which is entirely novel to this writer, that proof of standard police procedure would delineate for the jury what was the burden of proof and to provide some criteria to the jury in determining if the burden was met. No authority of any character is cited for this proposition, which may be explicable. This is not subject to our review, Alcala v. State, Wyo., 487 P.2d 448, 456, certiorari denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, rehearing denied 406 U.S. 911, 92 S. Ct. 1613, 31 L.Ed.2d 823.

The judgment is therefore affirmed.

McEWAN, J., not participating.